# In the United States Court of Federal Claims

**No. 21-2200T**
**Filed: May 31, 2026**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| | \* |
| **JAMES W. TINDALL,** | \* |
| | \* |
| **Plaintiff,** | \* |
| **v.** | \* |
| | \* |
| **UNITED STATES,** | \* |
| **Defendant.** | \* |
| | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**James W. Tindall**, <u>pro se</u>, Marietta, GA.

**Patrick Angulo**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. With him were **Douglas K. Mickle**, Assistant Director, Commercial Litigation Branch, **Patricia M. McCarthy,** Director, Commercial Litigation Branch, and **Brett A. Shumate**, Assistant Attorney General, Civil Division. **Collin R. Snyder**, Attorney, IRS Office of Chief Counsel, Internal Revenue Service, Dallas, TX, of counsel.

## O P I N I O N

<u>**HORN, J.**</u>

The current case brought by plaintiff James W. Tindall, as discussed below, has a history in multiple federal courts. In the case filed in the United States Court of Federal Claims, plaintiff initially alleged that defendant unlawfully withheld a whistleblower award due from the United States Internal Revenue Service (IRS) which he was due in return for information that plaintiff had provided concerning violations of federal Internal Revenue laws and regulations.[1] After this court granted the defendant's original motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction, <u>see</u> <u>Tindall v. United States</u>, No. 21-2200T, 2022 WL 19730768 (Fed. Cl. Oct. 25, 2022), <u>aff'd</u> <u>in</u> <u>part</u>, <u>vacated</u> <u>in</u> <u>part</u>, No. 2023-1139, 2023 WL 2881312 (Fed Cir. Apr. 11, 2023), plaintiff appealed the decision to the United States Court of Appeals for the Federal Circuit. As discussed further below, the Federal Circuit affirmed in part and vacated in part this court's decision and remanded

---

[1] The court notes that although Mr. Tindall has filed his case in this court pro se, he, in fact, is a licensed attorney in the State of Georgia. The State Bar of Georgia website reflects that Mr. Tindall was admitted to the Georgia Bar in 1994 and his current status is an "Inactive Member in Good Standing." https://www.gabar.org/member-directory/?id=9759298432A3CE5A67E4A44A0BDD5C21 (last visited May 31, 2026).

the case back to the United States Court of Federal Claims. Plaintiff subsequently received payment from the IRS for the whistleblower award, although plaintiff now alleges that he did not had receive the full compensation due to him. After the case was remanded and plaintiff received payment from the IRS, defendant, again, filed a motion to dismiss plaintiff's original complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Thereafter, Mr. Tindall filed an amended complaint alleging "two (2) breaches of contract and four (4) constitutional violations" by defendant. The defendant responded by filing a motion to dismiss plaintiff's amended complaint, again pursuant to RCFC 12(b)(1) and RCFC 12(b)(6). Defendant's current motion to dismiss plaintiff's amended complaint has been fully briefed.

## FINDINGS OF FACT

<u>Administrative Proceedings before the IRS</u>

Initially, plaintiff James Tindall submitted five IRS Forms 211, "Application for Award for Original Information," to the IRS in 2004 and 2005 regarding the alleged improper tax practices of several "unrelated federal consolidated return-filing taxpayers." In 2004 and 2005, plaintiff filed the claims on Form 211 pursuant to 26 U.S.C. § 7623 (2000). The relevant statute, 26 U.S.C. § 7623, read as follows:

> The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums as he deems necessary for—
>
> **(1)** detecting underpayments of tax, and
>
> **(2)** detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same,
>
> in cases where such expenses are not otherwise provided for by law. Any amount payable under the preceding sentence shall be paid from the proceeds of amounts (other than interest) collected by reason of the information provided, and any amount so collected shall be available for such payments.

26 U.S.C. § 7623. The "Instructions for Form 211, Application for Award for Original Information," attached to Form 211, provide:

> The Whistleblower Office has responsibility for the administration of the whistleblower award program under section 7623 of the Internal Revenue Code. Section 7623 authorizes the payment of awards from the proceeds of amounts the Government collects as a result of the information provided by the whistleblower. A claimant must file a formal claim for award by completing and sending Form 211, Application for Award for Original Information, to be considered for the Whistleblower Program.

Plaintiff alleged that after plaintiff submitted the IRS Forms 211, in a January 1, 2006 letter from the IRS to plaintiff, the IRS rejected one of the seven related claims. Subsequently, in February 2006, when plaintiff reached out to inquire about the status of his remaining 26 U.S.C. § 7623(a) related claims, plaintiff alleges the IRS told him that the agency did not have records of these claims. In a letter dated January 5, 2007, plaintiff resubmitted the claim forms, which he alleges also included additional supplemental information.

In 2006, 26 U.S.C. § 7623 was amended through the Tax Relief and Health Care Act of 2006, P.L. 109-432, 120 Stat. 2922 (TRHCA). This amendment labeled the previous version as 26 U.S.C. § 7623(a), and, relevant to the above captioned case, TRHCA added 26 U.S.C. § 7623(b) to the statute. The revised statute at 26 U.S.C. § 7623(a)-(b) provided:

(a) In general.--The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums as he deems necessary for--

(1) detecting underpayments of tax, or

(2) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same,
in cases where such expenses are not otherwise provided for by law. Any amount payable under the preceding sentence shall be paid from the proceeds of amounts collected by reason of the information provided, and any amount so collected shall be available for such payments.

(b) Awards to whistleblowers.--

(1) In general.--If the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual, such individual shall, subject to paragraph (2), receive as an award at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action (determined without regard to whether such proceeds are available to the Secretary). The determination of the amount of such award by the Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action.

(2) Award in case of less substantial contribution.--

(A) In general.--In the event the action described in paragraph (1) is one which the Whistleblower Office determines to be based principally on disclosures of specific allegations (other than information provided by the individual described in paragraph (1)) resulting from a judicial or

3

administrative hearing, from a governmental report, hearing, audit, or investigation, or from the news media, the Whistleblower Office may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action (determined without regard to whether such proceeds are available to the Secretary), taking into account the significance of the individual's information and the role of such individual and any legal representative of such individual in contributing to such action.

(B) Nonapplication of paragraph where individual is original source of information.--Subparagraph (A) shall not apply if the information resulting in the initiation of the action described in paragraph (1) was originally provided by the individual described in paragraph (1).

(3) Reduction in or denial of award.--If the Whistleblower Office determines that the claim for an award under paragraph (1) or (2) is brought by an individual who planned and initiated the actions that led to the underpayment of tax or actions described in subsection (a)(2), then the Whistleblower Office may appropriately reduce such award. If such individual is convicted of criminal conduct arising from the role described in the preceding sentence, the Whistleblower Office shall deny any award.

(4) Appeal of award determination.--Any determination regarding an award under paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).

(5) Application of this subsection.--This subsection shall apply with respect to any action--

(A) against any taxpayer, but in the case of any individual, only if such individual's gross income exceeds $200,000 for any taxable year subject to such action, and

(B) if the proceeds in dispute exceed $2,000,000.

(6) Additional rules.--

(A) No contract necessary.--No contract with the Internal Revenue Service is necessary for any individual to receive an award under this subsection.

(B) Representation.--Any individual described in paragraph (1) or (2) may be represented by counsel.

(C) Submission of information.--No award may be made under this subsection based on information submitted to the Secretary unless such information is submitted under penalty of perjury.

26 U.S.C. § 7623(a)-(b) (2006). As reflected in the amended language, for whistleblower claims that result in judicial or administrative action, 26 U.S.C. § 7623(b) mandates an award of at least 15% and up to 30% of the funds collected as a result of the whistleblower's information, but for whistleblower claims "of less substantial contribution," an award is limited to 10% of the collected funds. See 26 U.S.C. § 7623(b); see also Confidential Informant 59-05071 v. United States, 121 Fed. Cl. 36, 40 n.3 (2015) ("In the Tax Relief and Health Care Act of 2006, Congress added a new subsection (b) to § 7623, which created a non-discretionary award reviewable in the U.S. Tax Court, but only where the tax, penalties, interest additions, and additional amounts in dispute exceed $2,000,000. The new non-discretionary award only applies to information provided to the IRS after the date of enactment of the Act. Under the new statutory scheme, rewards for amounts in dispute under $2,000,000 are governed by § 7623(a)." (citations omitted)). In 2015, after 26 U.S.C. § 7623 was amended, plaintiff filed two additional Forms 211, which plaintiff asserts are unrelated to his previous filings.

On August 8, 2013, plaintiff submitted a letter to the IRS in which he claims to have "identified three (3) open claims that covered (3) discrete reporting positions across at least two (2) unrelated federal consolidated return-filing taxpayers," and on July 23, 2015, plaintiff "filed an additional (2) discrete Forms 211, Application for Award, that covered (2) discrete reporting positions for an additional unrelated federal consolidated return-filing taxpayer." As explained by the United States Tax Court:

Between June 13, 2004 and November 1, 2004, petitioner filed four Forms 211 to which the WBO [Whistleblower Office] assigned master claim number 2013-007993 and related claim numbers 2017-011232, 2017-011233, 2018-000744, 2018-000759, 2018-000760, 2018-000763, and 2018-000765 (collectively, the "Pre-TRHCA Enactment Claims" or "section 7623(a) claims"). Later, on or after July 23, 2015, petitioner filed two additional Forms 211, for an unrelated federal consolidated return-filing taxpayer, to which the WBO assigned claim number 2015-016670 and which the WBO associated with master claim number 2013-007993 (the "Post-TRHCA Enactment Claim" or "section 7623(b) claims").

Whistleblower 5903-19W v. Comm'r, No. 5903-19W, at 2 (T.C. Dec. 7, 2022), aff'd, No. 23-1056 (D.C. Cir. Oct. 12, 2023) (alteration added).

On January 31, 2019, the IRS sent plaintiff a preliminary award decision letter regarding his original Forms 211, informing him of his entitlement to an award of $650,910.34. The January 31, 2019 Preliminary Award Decision Letter referenced plaintiff's "Claim Number(s): 2013-007993 (master) and 2015-016670, 2017-011232, 2017-011233, 2018-000744, 2018-000759, 2018-000760, 2018-000763, and 2018-000765 (related)." In the January 31, 2019 Preliminary Award Decision Letter, the agency stated:

> The Whistleblower Office has reached a preliminary award recommendation under Internal Revenue Code 7623(a) based on your Form 211, Application for Award for Original Information dated 6/13/2004, this includes any additional information you may have provided in relation to the Form 211. Enclosed is a Summary Report that explains our preliminary award recommendation in the amount of $650,910.34. If there are any changes to the recommended award percentage or the amount of collected proceeds as reflected in the Summary Report, then the Whistleblower Office will send you a revised Preliminary Award Recommendation Letter.

The January 31, 2019 Preliminary Award Decision Letter also explained that whistleblower awards were subject to certain required deductions, according to statutory requirements, including those in the Budget Control Act of 2011, Pub. L. No. 112-25, 125 Stat. 240, which provides that awards were automatically reduced by a certain percentage determined annually by the Office of Management and Budget. A reduction of this kind is often referred to as a sequestration reduction or a sequestration haircut. According to the letter:

> The Budget Control Act of 2011, as amended by the American Tax Relief Act of 2012, requires that automatic reductions be made with respect to certain government payments. These required reductions include a reduction to awards paid under Internal Revenue Code section 7623. The required reduction percentage is determined annually by the Office of Management and Budget for the year in which payments are made. As a result, your preliminary recommended award reflects a reduction in accordance with the Office of Management and Budget guidance for the 2019 Fiscal Year reduction amount of 6.2%. The final award amount will use the reduction required in the year of payment.

A "Summary Report" attached to the January 31, 2019 Preliminary Award Decision Letter provided the methodology that the IRS had used to arrive at plaintiff's preliminary award amount based on the original tax amount collected and the applicable statutory reductions:

1. Preliminary tax, penalties, interest and other amounts collected based on information provided by Whistleblower: $ 6,939,342.59

2. Recommended Award Percent: 10%

3. Preliminary Award: Collected proceeds (Line 1) x recommended award percent (Line 2): $ 693,934.26

4. Preliminary Budget Control Act reduction (Line 3 amount x 6.2 percent): $ 43,023.92

The Budget Control Act of 2011, as amended by the American Tax Relief Act of 2012, requires that automatic reductions be made with respect to certain government payments. These required reductions include a reduction to awards paid under Internal Revenue Code section 7623. The required reduction percentage is determined annually by the Office of Management and Budget for the year in which payments are made. As a result, your preliminary recommended award reflects a reduction in accordance with Office of Management and Budget guidance for the 2019 Fiscal Year reduction amount of 6.2%. The final award amount will use the reduction required in the year of payment.

5. **Preliminary recommended IRC section 7623(a) Award Amount (Line 3 less Line 4):** $ 650,910.34

Awards payable under section 7623 are includible in the gross income of the recipient and subject to federal tax reporting and withholding requirements [sic] Generally, whistleblower awards paid to U.S. citizens or resident aliens in excess of $10,000 will be subject to a 24% withholding for federal income tax. Payments to foreign persons will be treated as fixed, determinable, annual, or periodical (FDAP) income and withheld at 30%. In addition, the IRS may offset awards payable under section 7623 against any outstanding Federal income tax liabilities or Treasury Offset Program debts that may be owed by you if our records reflect that you have an outstanding balance. Calculation of the amount due, if applicable, will be made at the time of the award payment.

6. Factors that contributed to the recommended award percentage:

The intermediate award percentage of 10% is appropriate and reasonable for this claim for award. This award percentage is prescribed in the Internal Revenue Manual for pre-enactment claim for award cases where the Whistleblower's information, though it did not start the examination or investigation of the taxpayers, "was of value in the determination of tax liabilities although not specific".

(capitalization and emphasis in original; alteration added).

The January 31, 2019 Preliminary Award Decision Letter further explained that "[t]his preliminary award recommendation letter begins the whistleblower award administrative proceeding," and

[i]f you agree with this preliminary award recommendation:

1. Check the appropriate box, sign and date the enclosed Response to Summary Report form indicating your agreement; and

2.  Return the signed form to us.

By checking the box, you agree with the preliminary award recommendation and accept it an an [sic] award decision.

If you do not agree with the Whistleblower Office preliminary award recommendation and wish to submit comments:

1.  Check the appropriate box, sign and date the enclosed Response to Summary Report form; and

2.  Return the signed Response to Summary Report along with any comments to the preliminary award recommendation to the Whistleblower Office within 30 days from the date of this letter.

3.  The Whistleblower Office will consider any comments received and send a Final Award Determination Letter.

(capitalization in original; alterations added). The boxes described in the January 31, 2019 Preliminary Award Decision Letter invite a recipient to select one of the following two statements: "I agree with the preliminary award recommendation and accept it as an award decision" or "I disagree with the preliminary award recommendation. I understand that if I wish to provide comments regarding the Summary Award Report such comments must be submitted within 30 days of the date of the letter transmitting the Summary Award."

On February 6, 2019, plaintiff sent the IRS a letter objecting to the January 31, 2019 Preliminary Award Decision Letter. Plaintiff's February 6, 2019 letter stated:

I received the Preliminary Award Letter, dated January 31, 2019, which proposes a preliminary net-net award of $650,910.34.

I appreciate your ability to quickly process the Preliminary Award Letter following the chaos of the recent federal shutdown. With the issuance of the Preliminary Award Letter, I am optimistic about where we are on the remaining timeline and hope we can resolve our remaining differences quickly to bring this project to a satisfactory conclusion.

As requested, I am returning a signed "*Response to Summary Report*" (page 6 of your letter) declining that preliminary award amount (*see enclosed*).

(capitalization and emphasis in original).

Plaintiff described three objections in his February 6, 2019 letter: (1) that it was improper for the agency to apply a reduction to his award under the Budget Control Act

8

of 2011, (2) that the IRS has a continuing obligation to "pay once additional proceeds are collected as the subsequent tax years close," and (3) that the award percentage should have been higher than 10%. Regarding the Budget Control Act of 2011, plaintiff explained:

> As some of my previous correspondence has indicated, I am not in agreement with the position of the IRS Whistleblower's Office that the Budget Control Act of 2011 creates a Sequestration Haircut that applies to Whistleblower Awards.

> Quite simply, the awards are paid from collected proceeds, which are not rationally part of the US budget, because these collected proceeds are something the US government would not have received but for the involvement of the IRS whistleblower.

(capitalization in original). Plaintiff's February 6, 2019 letter continues:

> Moreover, and specific to my case, the calculation is determined by the statutes in effect in 2004, which predate the Budget Control Act of 2011. Thus, any attempt to change that calculation impacts my property interest and violates the Taking Clause of the US Constitution (our 5th Amendment provides that *"nor shall private property be taken for public use, without just compensation"*).

(capitalization and emphasis in original).

> Regarding the continuing obligation to pay, plaintiff stated:

> [Y]our statement conflicts with [26 C.F.R.] *Reg. §301.7623-2(d)(5)(ii),* which states

>> "***Post-determination proceeds.*** *If, based on all information known with respect to the taxpayer's account as of the date of the computation described in paragraph (d)(5)(i) of this section, there is a possibility that the IRS may collect additional proceeds, then the Whistleblower Office will continue to monitor the case.* **If the Whistleblower Office identifies additional collected proceeds, then the IRS will compute and pay accordingly**".

> [26 C.F.R.] *Reg. §301-7623-2(d)(5)(i)* further states that

>> "*the IRS will compute the amount of collected proceeds based on all information known with respect to the taxpayer's account,* **including with respect to all tax attributes**, *as of the date the computation is made".*

> **Thus, there is an affirmative continuing obligation to pay once additional proceeds are collected as the subsequent tax years**

9

> **close. Moreover, there is an affirmative obligation to monitor all tax attributes and pay awards from subsequently collected proceeds.**

(alterations added; emphasis in original). Regarding the award percentage rate, plaintiff wrote:

> The Preliminary Award Letter, dated January 31, 2019, only provides an award percent of 10% and vaguely refers to the provided information as being "*of value . . . although not specific*".

> I am troubled by that brief statement, because it is inconsistent with the very specific statements and information I provided in my original letter, dated June 13, 2004 (*see enclosed*).

(emphasis and alteration in original). Plaintiff's February 6, 2019 letter included a section titled "**FOR SETTLMENT PURPOSES ONLY**," which stated:

> Over the last fifteen (15) years, I have had the occasion to complete my own tentative award calculation. **In all cases, my estimates have been limited by the $2 million limitation contained in the 2004 statute**. Once that limit has been reached, then there is no need to continue to monitor the taxpayers' accounts, because no more award monies can be paid.
> Given the discrepancies identified above (the inapplicability of 2011 Sequestration Haircut, the impact of reduced net operating loss attributes on subsequent collected proceeds, your affirmative obligation to continue to monitor those collections and pay subsequent awards, and the increased proper award percentage), **I propose that your Final Determination Letter reflect the application of the $2 million limitation and limit my award to $2 million, which will bring this project to a mutually satisfactory resolution of all our outstanding issues (*see enclosed*).**

(emphasis and capitalization in original). Plaintiff's February 6, 2019 letter concluded: "Alternatively, our collective failure to reach a mutually satisfactory resolution will require numerous definitional and process oversights to be publicly displayed and judicially resolved (with certainty) – none of which will be resolved in favor of the IRS." As noted above, plaintiff included a signed copy of the "Response to Summary Report," checking the box: "I disagree with the preliminary award recommendation" in the February 6, 2019 letter.

On March 5, 2019, the IRS sent plaintiff a final award decision letter advising that he was entitled to $650,910.34, the same amount as included in the preliminary award recommendation. The March 5, 2019 Final Award Decision Letter stated:

The Whistleblower Office has considered your Form 211, Application for Award for Original Information, dated June 13, 2004, this includes any additional information you may have provided in relation to the Form 211. On January 31, 2019, the Whistleblower Office sent you a preliminary award recommendation. The Whistleblower Office reviewed the comments you provided on the preliminary award recommendation. The Whistleblower Office has made a final decision that you are entitled to an award of $ 650,910.34.

(capitalization in original). In the March 5, 2019 Final Award Decision Letter, the IRS attached a "Determination Report" showing the methodology the agency had used to calculate the final award, which was identical to the methodology used in the preliminary award decision letter. The March 5, 2019 final award decision Letter also notified plaintiff that "[t]he Whistleblower Office will process the award for payment as promptly as the circumstances permit" (alteration added). Unlike the preliminary award decision letter, there was not an option for plaintiff to indicate that he agreed or disagreed with the final award.

On March 21, 2019, plaintiff sent the IRS a letter objecting to the final award decision. Plaintiff stated in this letter: "I received your 'Final Award Letter', dated March 5, 2019, which proposed an award of $650,910.34, which was unchanged from your preliminary offer and failed to appropriately consider the supplemental information I provided in mid-February 2019." In his March 21, 2019 letter, plaintiff raised similar concerns to those in his letter objecting to the preliminary award recommendation. In his March 21, 2019 letter plaintiff also stated:

**§7623(b) applies to my Claims for Reward**. In my letter, dated February 14, 2019, I reminded you that I filed the Form 211 Claims for Reward for the 2nd party to the blown §1031[2] transaction on July 23, 2015 (I previously forwarded you a copy of those Forms and a copy of your reply, dated July 30, 2015, confirming receipt and assigning claim number 2015-016670).

**Strangely, your 'Final Award Letter' that includes that assigned claim number (2015-016670) only considers the award under §7623(a), which only applies to claims filed before December 19, 2006, which does not apply to the Claims for Reward filed on July 30, 2015.**

As you are aware, these post-12/19/2006 Claims for Reward fall under the current award regime, which mandate a payout percentage of between 15-30% and apply a maximum limitation of $10M - well above the limitations under the prior regime.

---

[2] In his March 21, 2019 letter, plaintiff does not explain or elaborate on his allegation of a "blown §1031 transaction." The statute at 26 U.S.C. § 1031 (2024) is titled: "Exchange of real property held for productive use or investment." There is no reference to 26 U.S.C. § 1031 in plaintiff's original complaint or amended complaint and the parties do not address 26 U.S.C. § 1031 in briefing on defendant's motions to dismiss.

> In my letter, dated February 14, 2019, I encouraged you to consider this as part of your review for the Final Determination Letter - my request having fallen on deaf ears.
>
> Keep in mind, these are two discrete consolidated groups, two separate taxpayers and two longer NOL [net operating loss] rollforward periods that would need to be tracked and monitored.
>
> **Your 'Final Award Letter', dated March 5, 2019, ignores these facts and incorrectly applies the wrong sub-section of §7623 (you apply §7623(a) instead of §7623(b)).**
>
> **Finally, §7623(b) grants me the statutory right to appeal your determination to the US Tax Court.**

(alteration and footnote added; emphasis and capitalization in original). Plaintiff's March 21, 2019 letter concluded by advising the agency:

> These are some of the legal issues that will be resolved judicially if you fail to reconsider them and update your 'Final Award Letter', dated March 5, 2019.
>
> Do you really want a public court opinion on these issues that will bind you for all whistleblower awards?
>
> **If I fail to receive a corrected 'Final Award Letter' that incorporates these changes by Tuesday, April 2, 2019, then I will have no choice but to allow the US Tax Court to resolve these issues**.

(emphasis in original).

<u>United States Tax Court Proceedings</u>

Prior to plaintiff filing his lawsuit in the United States Court of Federal Claims, on April 1, 2019, plaintiff filed a petition in the United States Tax Court, Case No. 5903-19W. In his April 1, 2019 petition in the Tax Court, plaintiff identified the following points of disagreement with the agency's determination regarding the award to plaintiff:

> 1. In its Final Award Letter, dated March 5, 2019, Respondent abused its discretion by mislabeling Petitioner's §7623(b) claims as §7623(a) claims when Petitioner filed at least two (2) additional claims after December 20, 2006, that are covered by Respondent's Final Award Letter.
>
> 2. In its Final Award Letter, dated March 5, 2019, Respondent abused its discretion by mislabeling Petitioner's §7623(b) claims as §7623(a) claims when Petitioner provided supplemental information after December 20, 2006, that are covered by Respondent's Final Award Letter.

3. In its Final Award Letter, dated March 5, 2019, Respondent abused its discretion by applying the statutory scheme under §7623(a) to Petitioner's §7623(b) claims.

4. In its Final Award Letter, dated March 5, 2019, Respondent abused its discretion by applying a 10% award rate, which is below the statutory minimum rate required for §7623(b) claims (15% minimum) and well below the maximum rate allowed for §7623(b) claims (30% maximum) that Petitioner is eligible for.

5. In its Final Award Letter, dated March 5, 2019, Respondent abused its discretion by providing only boilerplate language in its Final Award Letter instead of meaningful explanations, as required by the Chenery doctrine (see SEC v. Chenery Corp. and SEC v. Chenery Corp.).

6. Supporting its Final Award Letter, dated March 5, 2019, Respondent abused its discretion by providing only boilerplate language in its Preliminary Award Recommendation and related Summary Report, dated January 31, 2019, instead of meaningful explanations, as required by the Chenery doctrine (see SEC v. Chenery Corp. and SEC v. Chenery Corp.).

7. In its Final Award Letter, dated March 5, 2019, Respondent abused its discretion by providing no support, no documentation and no meaningful analysis supporting its determination of the amount of the §7623(b) award amount (as one of several exceptions to the "record rule" outlined in Kasper v. Comm.), including Respondent's failure to provide any support for its determination of the amount of collected proceeds and Respondent's failure to provide any explanation for its decision to apply an award percentage of less than the required statutory minimum.

8. In its Final Award Letter, dated March 5, 2019, Respondent abused its discretion by stating that "there is no possibility the IRS will collect post-decision proceeds" which directly contradicts Respondent's own guiding regulations, which state:

> "*the IRS will compute the amount of collected proceeds based on all information known with respect to the taxpayer's account, **including with respect to all tax attributes**, as of the date the computation is made*".

13

Those regulations also state:

> "***Post-determination proceeds****. If, based on all information known with respect to the taxpayer's account as of the date of the computation described in paragraph (d)(5)(i) of this section, there is a possibility that the IRS may collect additional proceeds, then the Whistleblower Office will continue to monitor the case. **If the Whistleblower Office identifies additional collected proceeds, then the IRS will compute and pay accordingly**".*

9. In its Final Award Letter, dated March 5, 2019, Respondent abused its discretion by applying a 6.2% Budget Control Act reduction ("sequestration haircut") to Petitioner's §7623(b) award when the controlling statute (§7623) allows for no such reduction.

(emphasis in original; footnotes omitted).

On December 7, 2022, the United States Tax Court dismissed plaintiff's case for lack of jurisdiction. By way of background, the Tax Court explained:

Between June 13, 2004 and November 1, 2004, petitioner filed four Forms 211 to which the WBO assigned master claim number 2013-007993 and related claim numbers 2017-011232, 2017-011233, 2018-000744, 2018-000759, 2018-000760, 2018-000763, and 2018-000765 (collectively, the "Pre-TRHCA Enactment Claims" or "section 7623(a) claims"). Later, on or after July 23, 2015, petitioner filed two additional Forms 211, for an unrelated federal consolidated return-filing taxpayer, to which the WBO assigned claim number 2015-016670 and which the WBO associated with master claim number 2013-007993 (the "Post-TRHCA Enactment Claim" or "section 7623(b) claims").

Whistleblower 5903-19W v. Comm'r, No. 5903-19W, at 2. As explained by the United States Tax Court:

After examination, respondent [the United States] found that of the taxpayers related to petitioner's various claims, the taxpayers underlying claim numbers 2017-011232 and 2017-011232 [sic] were the only taxable parties. Therefore, respondent recovered proceeds from only these two claims, which are section 7623(a) claims.

The records further show that regarding claim number 2015-011670, the only section 7623(b) claim in this case, respondent did not take administrative or judicial action and did not collect any proceeds because

14

the statute of limitations to examine the taxpayer underlying the 2015-011670 for the years in questions [sic] had expired.

<u>Whistleblower 5903-19W v. Comm'r</u>, No. 5903-19W, at 2 (alterations added). Accordingly, the United States Tax Court granted the government's motion to dismiss for lack of jurisdiction and explained:

> The Secretary has long had the discretion to pay awards to persons who provide information that aids in (1) detecting underpayments of tax or (2) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws. Sec. 7623(a). Congress enacted the Tax Relief and Health Care Act of 2006 (TRHCA), Pub. L. No. 109-432, div. A, sec. 406, 120 Stat. at 2958, to address perceived problems with the discretionary award regime. TRHCA section 406 amended section 7623 to require the Secretary to pay whistleblower awards under certain circumstances. Under section 7623(b)(1) a whistleblower is entitled to a minimum award of 15% of the collected proceeds if the Commissioner proceeds with administrative or judicial action using information provided in a whistleblower claim. Whistle blower [sic] claims filed after TRHCA are subject to this Court's review. However, when a whistleblower submits a post-TRHCA claim using the same information the whistleblower provided to the WBO pre-THRCA [sic], this Court lacks jurisdiction.

<u>Whistleblower 5903-19W v. Comm'r</u>, No. 5903-19W, at 2 (alterations added).[3] When applying the Tax Relief and Health Care Act of 2006 to plaintiff's claims, the Tax Court continued: "We find that because petitioner's post-THRCA, [sic] claim number 2015-011670 provided the WBO the same information petitioner provided to the WBO pre-THRCA [sic] and because the remaining eight claims are pre-THCA [sic], we lack jurisdiction in this case." <u>Whistleblower 5903-19W v. Comm'r</u>, No. 5903-19W, at 2-3 (alterations added). The Tax Court further explained that "in <u>Li v. Commissioner</u>, 22 F.4th 1014 (D.C. Cir. Jan. 11, 2022), the Court of Appeals for the District of Columbia Circuit held that the Tax Court lacks jurisdiction of whistleblower cases involving threshold rejections of claims for whistleblower award where no judicial or administrative proceeding was commenced based on the whistleblower's information." <u>Whistleblower 5903-19W v. Comm'r</u>, No. 5903-19W, at 2. Accordingly, the Tax Court concluded that it lacked jurisdiction over Mr. Tindall's claims "because respondent did not commence judicial or administrative proceedings in response to the 2015-011670 [section 7623(b)] claim." <u>Whistleblower 5903-19W v. Comm'r</u>, No. 5903-19W, at 3 (alteration added).

---

[3] The United States Tax Court repeatedly mislabeled the abbreviation for the Tax Relief and Health Care Act of 2006 as "THRCA," instead of "TRHCA." This Opinion adds a "[sic]" in the instances the Tax Court used the incorrect abbreviation "THRCA."

15

Plaintiff appealed the December 7, 2022 United States Tax Court decision to the United States Court of Appeals for the District of Columbia Circuit, which affirmed the Tax Court's dismissal on October 12, 2023, stating:

> **ORDERED AND ADJUDGED** that the Tax Court's December 7, 2022 order dismissing for a lack of jurisdiction appellant's petition for review of a March 5, 2019 whistleblower determination be affirmed. The Tax Court did not clearly err by concluding that the information for which appellant sought a whistleblower award was provided to the Internal Revenue Service before December 20, 2006. See Feldman v. Fed. Deposit Ins. Co., 879 F.3d 347, 351 (D.C. Cir. 2018) (requiring district courts to resolve disputes over the factual basis for the court's subject-matter jurisdiction); U.S. Auto Sales, Inc. v. Comm'r of Internal Revenue, 153 T.C. 94, 100 & n.7 (2019) (applying this standard in Tax Court). Consequently, the Tax Court correctly concluded that it lacked jurisdiction. See Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, § 406(d), 120 Stat. 2922, 2960; see also Lissack v. Comm'r of Internal Revenue, 68 F.4th 1312, 1315 (D.C. Cir. 2023).

Whistleblower 5903-19W v. Comm'r, No. 23-1056, at 1 (D.C. Cir. Oct. 12, 2023) (capitalization and emphasis in original). The Court of Appeals for the District of Columbia Circuit thereafter denied plaintiff's petition for rehearing and petition for rehearing en banc on December 21, 2023. Plaintiff then petitioned the United States Supreme Court for a writ of certiorari, which was denied on October 7, 2024. The United States Supreme Court denied plaintiff's petition for rehearing on November 18, 2024.

Original Proceedings in the United States Court of Federal Claims

On November 16, 2021, more than two and a half years after filing his petition in the United States Tax Court, and while plaintiff's petition in the Tax Court was still pending, plaintiff filed his original complaint in the United States Court of Federal Claims. Like his claim in the United States Tax Court, plaintiff's original complaint in this court also concerned his § 7623 whistleblower award. Although plaintiff's action in the Tax Court argued that his whistleblower claims should have been analyzed by the IRS under § 7623(b), instead of § 7623(a), plaintiff's original complaint in the United States Court of Federal Claims originally also alleged that defendant improperly had not yet paid plaintiff the money awarded to him. Plaintiff's original complaint in the United States Court of Federal Claims alleged two violations of the Takings Clause of the Fifth Amendment to the United States Constitution and two violations of the Due Process Clause of the Fifth Amendment to the United States Constitution regarding the payment of plaintiff's whistleblower award. Plaintiff alleged that he had contacted the IRS twelve times to request payment since his notification of the final award decision, and had notified the IRS "that interest on the outstanding balance continues to accrue." Plaintiff also alleged that he had "no avenue" to appeal the agency's determination and that the IRS has not "identified a legally-sufficient reason for failing to remit plaintiff's IRC §7623(a) award." As recourse, plaintiff's original complaint in the United States Court of Federal Claims sought the following:

16

a) An order from the US Court of Federal Claims requiring the prompt and immediate payment by defendant of plaintiff's IRC §7623(a) award of **$693,934.26** (i.e., the first unconstitutional taking);

b) An order from the US Court of Federal Claims requiring defendant to pay plaintiff for the value of the use of plaintiff's IRC §7623(a) award monies that defendant has been wrongfully using since March 5, 2019 (i.e., the second unconstitutional taking)(currently estimated to be **$554,741.23**);

c) An order from the US Court of Federal Claims requiring defendant to pay plaintiff $1,000,000 for each of the four violations of plaintiff's constitutional rights (two violations of the Takings Clause and two violations of the Due Process Clause), totaling **$4,000,000.**

(emphasis in original).

As indicated above, in response to the original complaint filed in this court, defendant had filed a motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. In defendant's original motion to dismiss plaintiff's original complaint, defendant had argued that "Mr. Tindall's claims are barred by 28 U.S.C. § 1500" because of his "Earlier-Filed, Still-Pending Litigation In The United States Tax Court" and, thus, must be dismissed. Defendant argued:

This jurisdictional bar applies here. In the instant complaint, Mr. Tindall seeks monetary relief related entirely to a Final Award Decision letter issued by the WBO. But that Final Award Decision letter, and Mr. Tindall's entitlement to payment thereunder, is also the focus of Mr. Tindall's petition currently pending in the United States Tax Court. In that case, Mr. Tindall attacks the WBO's award determination and alleges that his award should have fallen under § 7623(b). But the fact that Mr. Tindall takes a different position or seeks different relief in each case is of no import. See Ministerio Roca Solida v. United States, 778 F.3d 1351, 1353 (Fed. Cir. 2015) ("[I]t is irrelevant whether the relief sought in the two co-pending suits is the same or different."). "All that matters is that the two suits be based on 'substantially the same operative facts.'" Id. (quoting Tohono, 563 U.S. at 317). Here, both suits are based on the Final Award Decision letter, issued to Mr. Tindall following his whistleblowing activity. The Court should therefore dismiss this case for lack of subject matter jurisdiction under 28 U.S.C. § 1500.

(footnote omitted, internal citations omitted; alteration in original).

Defendant further argued in its original motion to dismiss plaintiff's original complaint that plaintiff's claims should be dismissed because plaintiff's claims were not ripe because the defendant was not yet under an obligation to remit payment given plaintiff's rejection of the IRS award dollar determination and plaintiff's decision to file a

17

petition in the United States Tax Court. Defendant further argued that, even if this court were to conclude plaintiff's claims were ripe, the Tucker Act, 28 U.S.C. § 1491, does not confer jurisdiction for this court to consider the plaintiff's claims "[b]ecause Mr. Tindall has failed to identify any such contractual relationship, constitutional provision, or statute necessary to invoke this Court's jurisdiction." (alteration added). Regarding plaintiff's claims for compensation under the Fifth Amendment Takings Clause, defendant argued that plaintiff had not conceded the validity of the government's action, and, "fundamentally, Mr. Tindall has not actually alleged that the Government has taken anything. Instead, he alleges that the Government has improperly withheld monies owed to him pursuant to the Final Award Decision letter." (footnote omitted). Regarding plaintiff's due process clause claims, defendant argued that "the Federal Circuit has repeatedly held that the Due Process Clause is not a money-mandating provision" and, thus, this court lacks jurisdiction.

In response to defendant's original motion to dismiss plaintiff's original complaint, plaintiff argued:

> Defendant's fundamental ignorance of the finality of a discretionary award under IRC §7623(a) is appalling. No court in the world can entertain an appeal of an award specific to a discretionary IRC §7623(a) claim, regardless of how error-filled that determination might be. The amount in a Defendant's discretionary §7623(a) Award Letter is final in every sense of the word—there is no forum that has jurisdiction to entertain a review of that determination. Thus, the claim before this Court, demanding that Defendant pay Plaintiff his IRC §7623(a) award monies, cannot get any riper.

In addition to alleging that each of his claims were ripe for this court to review, plaintiff argued that defendant's conduct entitled him to just compensation under the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fifth Amendment. Plaintiff argued that "[t]he United States Court of Claims has jurisdiction over this dispute pursuant to 28 U.S.C. §1491(a)(1), because the basis for this dispute is Defendant's unconstitutional taking of Plaintiff's property and Defendant's willful violations of Plaintiff's due process rights under the Fifth Amendment to the US Constitution." (alteration added). To support plaintiff's assertion that defendant's actions constitute an unconstitutional taking, plaintiff explained:

> Defendant has no legal basis for its continuing possession of Plaintiff's IRC §7623(a) award monies and is merely refusing to comply with the underlying statute and its own internal processes and procedures in order to gain an impermissible advantage in the unrelated petition before the Tax Court dealing with Defendant's arbitrary and capricious determinations specific to Plaintiff's IRC §7623(b) claims. In other words, despite the IRC §7623(a) claim and the IRC §7623(b) claims being mutually exclusive, Defendant is choosing to withhold timely payment of Plaintiff's IRC §7623(a) award monies in an attempt to3 coerce Plaintiff to withdraw his petition in Tax Court dealing with Plaintiff's IRC §7623(b) claims. That is most improper.

18

Additionally, in plaintiff's response to defendant's original to dismiss plaintiff's original complaint, plaintiff attempted to assert a contract claim, stating:

> [O]nce Defendant determined the specific amount of Plaintiffs [sic] §IRC §7623(a) award, an actual contract was created. This actual contract is documented by Defendant it [sic] its IRC §7623(a) Award Letter, wherein Defendant identified Plaintiff's promise to perform (provide information to Defendant), Defendant confirmed that Plaintiff did, in fact, provide information to Defendant, Defendant confirmed that it used the information to collect proceeds and Defendant identified Defendant's promise to pay Plaintiff a very specific amount (i.e., $693,934.26) as an award under IRC §7623(a). Thus, an actual contract between the parties exists and Defendant admitted that one exists by describing that actual contract in its IRC §7623(a) Award Letter, dated March 5, 2019.

(footnote omitted; alterations added).

Additionally, on March 7, 2022, plaintiff filed a "Motion for Sanctions Pursuant to RCFC Rule 11" and argued that "**Defendant's Motion to Dismiss is itself meritless on its face**." (emphasis in original). In support of his motion for sanctions and his opposition to defendant's original motion to dismiss plaintiff's original complaint, in a sur-reply plaintiff alleged that "**the allegations by Defendant in its Motion to Dismiss before the US Court of Federal Claims <u>contradict</u> the allegations by Respondent in its Motion to Dismiss before the Tax Court**." (all emphasis in original). In plaintiff's sur-reply, he further alleged:

> **Because of the collaboration between Defendant's counsel (i.e., the Department of Justice) and Respondent's counsel (i.e., the IRS Office of Chief Counsel), these two contradictory motions to dismiss can only have been filed in bad faith, which is both appalling and disturbing. Each of Defendant's and Respondent's counsel are aware of the contradictory nature of their respective Motions to Dismiss, but they went ahead and filed them anyway.**

(all capitalization and emphasis in original). Defendant's original motion to dismiss plaintiff's original complaint and plaintiff's motion for sanctions were fully briefed.

On October 25, 2022, this court dismissed plaintiff's original complaint in this court, and concluded that plaintiff's claims were not yet ripe for review because of his still-pending appeal of the award determination in the United States Tax Court. See <u>Tindall v. United States</u>, 2022 WL 19730768, at *13–14. Furthermore, this court dismissed plaintiff's takings claims because plaintiff had not demonstrated a valid property interest in the item allegedly seized by the government, nor had he demonstrated that the items were taken for public use. See <u>id.</u> at *15. This court also dismissed plaintiff's Fifth Amendment Due Process claims for lack of jurisdiction. See <u>id.</u> Finally, this court dismissed plaintiff's motion

19

for sanctions against defendant because plaintiff's allegations did "not come close to constituting a sanctionable offense." Id. at *19.

Proceedings in the United States Court of Appeals for the Federal Circuit

Plaintiff appealed the United States Court of Federal Claims decision to the United States Court of Appeals for the Federal Circuit. On April 11, 2023, the United States Court of Appeals for the Federal Circuit affirmed this court's decision in part, vacated the decision in part, and remanded the case back to this court. See generally Tindall v. United States, No. 2023-1139, 2023 WL 2881312 (Fed Cir. Apr. 11, 2023). The court affirmed this court's ruling on sanctions, seeing "no merit to Mr. Tindall's motion for sanctions." See id. at *4 The Federal Circuit vacated this court's ruling on ripeness and stated

in the circumstances of this case the court erred in holding that the purported lack of ripeness was a jurisdictional bar. The ripeness issue as to the Tax Court case here is not concerned with whether there is an Article III case or controversy, but whether it would conserve judicial resources to postpone adjudication. See S.A. 16 (Claims Court explaining that the ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies . . ." (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 148 (1967)); Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003) (distinguishing purely "prudential" ripeness analysis from "Article III limitations on judicial power" (citation omitted)). But we do not reach Mr. Tindall's contract claim, or the Claims Court's other merits holdings, because the court failed to address a different, colorable argument that it lacked jurisdiction over the suit. As the government suggests in its response brief, that provision must be addressed before the Claims Court or we can address the merits.

Tindall v. United States, 2023 WL 2881312, at *3 (omission and alteration in original; footnote omitted).[4] The Federal Circuit next addressed the jurisdictional issue presented by 28 U.S.C. § 1500, and stated:

Section 1500 of Title 28 provides that the Claims Court "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the

---

[4] Although the Federal Circuit stated in its April 11, 2023 decision, "we do not reach Mr. Tindall's contract claim," the court notes that Mr. Tindall did not plead a contract claim in his November 16, 2021 complaint, and, therefore, a contract claim was not before the United States Court of Federal Claims or the United States Court of Appeals for the Federal Circuit. As reflected above, plaintiff attempted to make a contract argument in his response to defendant's original motion to dismiss plaintiff's original complaint. As described below, plaintiff now alleges breach of contract in his amended complaint after remand.

United States." The court lacks jurisdiction "where an earlier-filed suit is 'based on substantially the same operative facts' as the Claims Court suit, 'regardless of the relief sought in each suit.'" Acetris Health, LLC v. United States, 949 F.3d 719, 728–29 (Fed. Cir. 2020) (quoting United States v. Tohono O'Odham Nation, 563 U.S. 307, 317 (2011)). We determine whether the earlier-filed suit is "based on substantially the same operative facts" as the Claims Court case by assessing if the latter suit "would have been barred by res judicata if it had been brought in district court" under the res judicata principles in force when the predecessor to § 1500 was enacted. Id. at 729 (citation omitted).

Under that standard, if the two suits arise "out of one and the same act or contract," or "the same evidence support[s] and establish[es] both the present and the former cause of action," the Claims Court suit cannot proceed. Tohono, 563 U.S. at 316 (citations omitted). In addition, we have held that the res judicata standard would not be satisfied where the earlier suit was filed in a tribunal that "had no colorable authority" to address it. Acetris, 949 F.3d at 729 & n.4.

Applying § 1500 here is complex, and we decline to address it in the first instance. It is true that Mr. Tindall's suit in Tax Court, based on § 7623(b), was pending when he filed in Claims Court as to his § 7623(a) award. But even assuming the suits were based on the same "act or contract"—the IRS's final award letter—it is not clear that the Tax Court had colorable jurisdiction to review Mr. Tindall's filing. That court found that it lacked jurisdiction on two independent grounds. See S.A. 70–74. And if the Tax Court lacked colorable authority to consider Mr. Tindall's appeal, his earlier filing there would "not have preclusive effect under [§] 1500," and so § 1500 would not be a bar. Acetris, 949 F.3d at 729. We leave this question for the Claims Court to decide on remand.

Tindall v. United States, 2023 WL 2881312, at *3-*4 (alteration in original). The Federal Circuit also explained:

If § 1500 applies, final resolution of the Tax Court case would not vest the Claims Court with jurisdiction if the former suit were still pending when the Claims Court case was filed. See Harbuck v. United States, 378 F.3d 1324, 1328 (Fed. Cir. 2004). If the Tax Court case is final and § 1500 applies, Mr. Tindall may file a new suit in the Claims Court within the six-year statute of limitations if he wishes to pursue his claims. See 28 U.S.C. § 2501.

Tindall v. United States, 2023 WL 2881312, at *4.

21

Administrative Proceedings Before the IRS Following the Tax Court Proceedings

On January 23, 2025, after the conclusion of the United States Tax Court proceedings and exhaustion of all avenues of appeal from the Tax Court's decision, including at the United States Supreme Court, plaintiff received payment from the IRS in the amount of $497,328.81 as a whistleblower award. In the case currently before this court, defendant submitted an award breakdown to this court, stating: "The collected proceeds of $6,939,342.59 times 10% equals $693,934.26; $693,934.26 minus the fiscal year 2025 5.7% sequestration deduction of $39,554.25 equals $654,380.01; and $654,380.01 minus withholding tax of $157,051.20 (i.e., 24% of $654,380.01) equals— the amount paid to Mr. Tindall—$497,328.81." The IRS's explanation regarding the timing of this award in the "Special Instructions/Notes" section of the Award Payment Request Form, stated the "Claim was in Tax Court Litigation. Court dismissed the case for lack of jurisdiction."

Proceedings in the United States Court of Federal Claims Following the Remand

Plaintiff's case is now before the trial court on remand.[5] On May 1, 2025, after the remand, defendant moved to dismiss plaintiff's original complaint, in this court, arguing that plaintiff's original complaint was moot because plaintiff had received payment of the award in dispute. Defendant claimed that the alleged violation at the heart of plaintiff's original complaint was the allegedly unlawful nonpayment of the whistleblower award, and, with the payment now completed, there was no longer a case or controversy. Defendant also argued that the IRS's application of the statutorily-required sequestration deduction was not within this court's jurisdiction to review because "such claim lacks a money-mandating source of law." Defendant further asserted that plaintiff had failed to state a claim within this court's jurisdiction, arguing that this court had already determined that it did not have jurisdiction over plaintiff's Fifth Amendment claims and that plaintiff did not assert a breach of contract. Moreover, even if the final award decision letter did constitute a contract, defendant alleged that plaintiff has not established a breach of contract. In support, defendant cited the regulation at 26 C.F.R. § 301.7623-4(d)(1), which states:

> Payment of an award will be made as promptly as the circumstances permit, but not until there has been a final determination of tax with respect to the action(s), as defined in paragraph (d)(2) of this section, the Whistleblower Office has determined the award, and all appeals of the Whistleblower Office's determination are final or the whistleblower has executed an award consent form agreeing to the amount of the award and waiving the whistleblower's right to appeal the determination.

---

[5] The court notes that after the remand, plaintiff moved for partial summary judgment. The court stayed plaintiff's motion pending final resolution of Mr. Tindall's United States Tax Court case. Thereafter, on May 13, 2025, plaintiff filed an amended complaint, as discussed further below. Therefore, plaintiff's motion for partial summary judgment is now moot.

26 C.F.R. § 301.7623-4(d)(1) (2025).

After defendant filed its motion to dismiss plaintiff's original complaint after remand, on May 13, 2025, plaintiff filed an amended complaint. Like his original complaint, plaintiff's amended complaint again alleges defendant violated the Takings Clause and the Due Process Clause of the Fifth Amendment of the United States Constitution. Plaintiff's amended complaint alleges that defendant had committed an unconstitutional taking when it refused to pay plaintiff any portion of the whistleblower award from the time of the March 5, 2019 Final Award Decision Letter until when the government paid the lump sum payment to plaintiff on January 23, 2025. Plaintiff argues that "in the 2,151-days subsequent to that [March 5, 2019 Final Award Decision Letter] determinations [sic], defendant still refused to pay any of the §7623(a) award amounts to plaintiff." (alterations added).

Plaintiff also argues in his amended complaint that the March 5, 2019 Final Award Decision Letter constitutes two contracts between plaintiff and defendant, one for each of plaintiff's two 26 U.S.C. § 7623(a) claims that served as the basis of his single award. Further, according to plaintiff: "On January 23, 2025, defendant made a partial payment of plaintiff's §7623(a) awards. Defendant's partial payment is a party admission by defendant that two (2) tax whistleblower contracts have existed between the parties since March 5, 2019." Plaintiff claims that because defendant allegedly entered into two contracts by basing the final award on two 26 U.S.C. § 7623(a) claims, the failure to pay plaintiff for 2,151 days constitutes a breach of contract.[6] Plaintiff bases this claim on the text of the March 5, 2019 Final Award Decision Letter, in which the Whistleblower Office stated that the IRS would "process the award for payment as promptly as the circumstances permit." Plaintiff also asserts a second breach of contract claim based on the argument that defendant's payment was $39,554.25 lower than the full amount of the preliminary award amount. According to plaintiff: "Defendant's partial payment is a second

---

[6] According to plaintiff, the referenced timeframe of 2,151 days reflects the amount of time between the March 5, 2019 Final Award Decision Letter and when defendant paid plaintiff on January 23, 2025. Plaintiff alleged in his amended complaint: "On January 23, 2025, 2,151 days after the issuance of its Award Letter, defendant made a partial payment of plaintiff's §7623(a) awards ($654,380.01), which was $39,554.25 less than the final amount of the §7623(a) awards that defendant determined was due and payable in its Award Letter, dated March 5, 2019." The court notes that in addition to the 2,151 days, plaintiff's submissions refer to different calculations of time. For example, in plaintiff's response to the motion to dismiss plaintiff's amended complaint currently before the court, plaintiff identifies as an issue before the court: "Whether defendant's taking and possession of plaintiff's §7623(a) award monies for 2,187 days without paying any compensation for that continuing possession violates the 'Takings' clause of the 5th Amendment to the U.S. Constitution, which requires payment of 'just compensation' when defendant takes property?" Plaintiff separately argues: "In the 2,309-days since defendant's obligation came into being, defendant continues to refuse to pay the full amount due, despite defendant being under an obligation to pay that amount promptly."

breach of both of the two (2) tax whistleblower contracts that have existed between the parties since March 5, 2019, because defendant is attempting to pay less than the full and final §7623(a) award amounts determined by defendant to be paid to plaintiff." Plaintiff continues:

> Defendant's refusal to comply with its contractual obligations and pay promptly, consistent with its related obligations under the implied covenant of good faith and fair dealing, has no basis in fact or law.
>
> **Therefore, as a matter of law, defendant's continuing refusal to promptly pay over plaintiff's §7623(a) award monies is a breach of the two (2) whistleblower contracts between the parties.**

(emphasis in original).

Additionally, just as in plaintiff's original complaint in this court, and as reflected above, in plaintiff's amended complaint, plaintiff again alleges defendant committed two violations of the Takings Clause of the Fifth Amendment to the United States Constitution and two violations of the Due Process Clause of the Fifth Amendment to the United States Constitution. According to plaintiff:

> As a simple matter, defendant has failed to pay 'just compensation' related to each of the two (2) discrete §7623(a) awards that defendant determined was owed to plaintiff and that defendant continues to possess.
>
> Additionally, defendant has failed to provide any due process surrounding its exercise of its power of eminent domain when it took possession of plaintiff's two (2) discrete §7623(a) awards that defendant determined was owed to plaintiff.
>
> Because each §7623(a) determination creates a separate and discrete tax whistleblower contract and a separate and discrete §7623(a) award, defendant's conduct is multiplied by two (2).
>
> Thus, defendant has violated plaintiff's constitutional rights four (4) times – a Takings Clause violation and Due Process violation specific to each of the two (2) §7623(a) tax whistleblower contracts.

(emphasis in original).

As for damages, plaintiff claims in his amended complaint that defendant's improper conduct warrants payment of interest for the period of time that defendant possesses plaintiff's award, stating:

> Thus, the measure of plaintiff's damages under the 'breach of contract' theory for recovery or the 'just compensation' requirement of the 5[th]

24

> Amendment is the accrual of interest for the period of time that defendant breaches its tax whistleblower contracts with plaintiff and possesses plaintiff's property. **That amount will continue to increase as the number of days that defendant <u>continues</u> to possess, control and use plaintiff's property increases.**

(emphasis in original). Plaintiff's amended complaint continues:

> Given defendant's two (2) breaches of contract and four (4) constitutional violations specific to plaintiff's §7623(a) awards, plaintiff requests the following:
>
> a) An order from the U.S. Court of Federal Claims requiring the prompt and immediate payment by defendant of the remaining outstanding amount of plaintiff's §7623(a) awards of **$39,554.25**;
>
> b) An order from the U.S. Court of Federal Claims requiring defendant to pay plaintiff for plaintiff's damages that it has suffered since March 5, 2019, stemming from defendant's breaches of the two (2) tax whistleblower contracts (measured by the amount of accrued interest over six (6) years – currently estimated to be **$4,459,904.17**);
>
> c) An order from the U.S. Court of Federal Claims requiring defendant to pay plaintiff the 'just compensation' for defendant's use of plaintiff's §7623(a) award monies that defendant has been using since March 5, 2019 (measured by the amount of accrued interest over six (6) years – currently estimated to be **$4,459,904.17**);
>
> d) An order from the U.S. Court of Federal Claims requiring defendant to pay plaintiff $5,000,000 for each of the four violations of plaintiff's constitutional rights (two violations of the Takings Clause and two violations of the Due Process Clause), totaling **$20,000,000**; and
>
> e) An order from the U.S. Court of Federal Claims requiring defendant to pay plaintiff for the accrued interest on the four (4) constitutional violations for the period of those violations (currently estimated to be **$130,485,386.15**).

(emphasis in original).

In response to plaintiff's amended complaint, defendant filed another motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction and RCFC 12(b)(6) for failure to state a claim. Defendant first urges this court to dismiss plaintiff's amended complaint due to a lack of subject matter jurisdiction, claiming that plaintiff fails to allege anything that would establish this court's jurisdiction. Regarding plaintiff's two contract claims, that the failure to pay the full amount plaintiff believes he is entitled to

and the delay in making the payment in the first place, are breaches of contract by the defendant, defendant argues that plaintiff has not sufficiently established the existence of a contract implied in fact. Defendant argues:

> This court can only exercise jurisdiction where there is at least a non-frivolous allegation of a contract with the government. Here, however, Mr. Tindall has not alleged any of the essential elements of a contract. He bases his entire claim around the March 5, 2019 Final Award Decision letter. He alleges that this letter created two contracts between the defendant and Mr. Tindall. But he has made no allegations as to the parties' intent to contract, the existence of an offer and acceptance, or any government representative with actual authority to bind the United States in contract.

(citations omitted). Defendant also argues that a contract does not exist because plaintiff rejected defendant's offer in the March 5, 2019 Final Award Decision letter. Furthermore, defendant claims that, even if this court was to find subject matter jurisdiction through the existence of a contract, plaintiff fails to properly allege breach. According to defendant, plaintiff's award was calculated and delivered according to the language in the March 5, 2019 Final Award Decision Letter and 26 C.F.R. § 301.7623-4(d)(1). Defendant states that plaintiff was paid after the dismissal of his appeal of the award in the United States Tax Court was finalized, and the application of the sequestration reduction was not a breach because the terms of the reductions were explicitly included in the Final Award Letter. Defendant also adds that plaintiff has failed to plausibly allege damages, as follows:

> For the reasons discussed above, Mr. Tindall has not suffered any damages as he has already received the award payment he seeks. The other damages he alleges (including $20 million in damages for constitutional violations) cannot be shown with reasonable certainty. Nor does this Court have jurisdiction to grant Mr. Tindall's request for interest (including $130,485,386.15 in interest allegedly accrued on his constitutional claims). Finally, to the extent that Mr. Tindall's asserted damages have no relation to damages actually incurred but seek instead to penalize defendant for its allegedly unlawful conduct, this Court lacks jurisdiction to award punitive damages.

(citations omitted).

Additionally, defendant argues that this court lacks jurisdiction over plaintiff's constitutional claims. Defendant also notes that this court had previously dismissed plaintiff's takings and due process constitutional claims in the October 25, 2022 dismissal, stating that the current Fifth Amendment claims should be dismissed because of the law-of-the-case doctrine, stating:

> Mr. Tindall's two-year attempt to continuously reassert already-dismissed claims is without merit and unduly strains the resources of this Court and

the Government. This Court's holding regarding Mr. Tindall's constitutional claims was correct in 2022 and it remains correct today. Under the law-of-the-case doctrine, that holding "should continue to govern the same issues in subsequent stages in the same case." Accordingly, these already-dismissed constitutional claims cannot establish this Court's jurisdiction.

(citations omitted). Defendant further states that plaintiff's amended complaint does not create a need for the court to reconsider its initial dismissal, arguing:

Mr. Tindall's recently filed amended complaint does not change this analysis. Claims arising from the Due Process Clause [of the Fifth Amendment to the United States Constitution] remain outside of this Court's jurisdiction. And Mr. Tindall's amended complaint fails, once more, to allege that is property was taken for public use. Indeed, Mr. Tindall's takings claim stems from the same conduct challenged in his initial complaint and does not include any additional allegations to suggest that the Court's prior holding was incorrect.

(alteration added; citations omitted).

In plaintiff's response to defendant's motion to dismiss plaintiff's amended complaint, plaintiff repeatedly alleges that defendant is attempting to mislead the court, saying that "defendant consistently prefers to muddy the waters with irrelevant and unsupported factual allegations that are generalized, inaccurate and contradicted by the set of shared documents." Plaintiff continues to allege that the claims in the United States Tax Court and subsequent appeal were separate from the award promised in the March 5, 2019 Final Award Decision Letter, which makes defendant's delayed payment unjustified. According to Mr. Tindall:

[D]efendant attempts to confuse this court by conflating nonpayment of the §7623(a) award before this court with plaintiff's §7623(b) claims before the Tax Court by referring in the singular to "his whistleblower award". In Plaintiff's Motion for Partial Summary Judgement, dated June 21, 2023, plaintiff clearly described the two types of claims [§7623(a) and §7623(b)] and the fact that those claims are "mutually exclusive".

(emphasis in original; alterations added; footnote omitted). Plaintiff also claims that this court's previous dismissal of his Constitutional claims does not invalidate his current claims because of new information in the case, which allegedly was that the United States Tax Court's dismissed his claims on December 7, 2022, and that defendant paid plaintiff on January 23, 2025.

In defendant's reply brief, defendant argues that plaintiff's suit in the United States Tax Court was, in fact, an appeal of his final award, thereby making its delay of the award justified, arguing:

27

There is no dispute that Mr. Tindall's whistleblower award was issued under § 7623(a). Mr. Tindall rejected the award, and filed a petition in the United States Tax Court, alleging that the IRS abused its discretion when it mislabeled his § 7623(b) claims as § 7623(a) claims. The Tax Court denied his petition, the [United States Court of Appeals for the District of Columbia Circuit] affirmed, and the Supreme Court denied Mr. Tindall's petition for writ of certiorari.

(citations omitted; alteration added). Defendant's motion to dismiss plaintiff's amended complaint has been fully briefed by the parties.

**DISCUSSION**

28 U.S.C. § 1500

As described above, this case includes a history across multiple courts with overlapping timelines. Chronologically, Mr. Tindall first filed an administrative claim with the IRS and then filed a case in the United States Tax Court in April 2019, based on the March 5, 2019 Final Award Decision Letter plaintiff received. Two years later, while his first court case was still pending in the United States Tax Court, plaintiff filed his original complaint in the United States Court of Federal Claims on November 16, 2021. As described above, plaintiff's November 16, 2021 complaint alleged that the government had wrongfully withheld the total amount he was awarded by the March 5, 2019 Final Award Decision Letter under 26 U.S.C. § 7623(a) and that such conduct violated his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution and also constituted a taking pursuant to the Fifth Amendment to the United States Constitution. After defendant's original motion to dismiss plaintiff's original complaint was fully briefed, on October 25, 2022, this court dismissed plaintiff's original complaint for lack of jurisdiction. This court held that plaintiff's suit was not ripe due to the then-ongoing United States Tax Court proceedings, that plaintiff's taking claim must fail because he had not conceded the validity of the government's actions for purposes of a takings claim, and that the United States Court of Federal Claims does not have jurisdiction over claims based on the Due Process Clause of the Fifth Amendment. See generally Tindall v. United States, 2022 WL 19730768. This court also dismissed plaintiff's motion for sanctions against defendant's attorney of record. Plaintiff appealed this court's decision to the United States Court of Appeals for the Federal Circuit in November 2022. Subsequently, in December 2022, the United States Tax Court dismissed plaintiff's action for lack of jurisdiction. Thereafter, the United States Court of Appeals for the Federal Circuit issued a decision on April 11, 2023 that affirmed in part, vacated in part, and remanded the case back to the United States Court of Federal Claims. See generally Tindall v. United States, 2023 WL 2881312. Five months after the Federal Circuit decision was issued, the decision of the United States Tax Court to dismiss for lack of jurisdiction was affirmed by the United States Court of Appeals for the District of Columbia Circuit on October 12, 2023. The Court of Appeals for the District of Columbia Circuit subsequently denied plaintiff's petition for rehearing and petition for rehearing en banc on December 21, 2023. Thereafter, plaintiff appealed the District of Columbia Circuit decision to the United States

Supreme Court, which denied certiorari on October 7, 2024. On November 18, 2024, the Supreme Court denied plaintiff's petition for rehearing. Plaintiff then filed an amended complaint in this court on May 13, 2025.

According to the United States Court of Appeals for the Federal Circuit, in its April 11, 2023 decision, the Federal Circuit did "not reach Mr. Tindall's contract claim, or the Claims Court's other merits holdings," because the Federal Circuit indicated that this court should have first addressed "a different, colorable argument that it lacked jurisdiction over the suit." Tindall v. United States, 2023 WL 2881312, at *3. The Federal Circuit, therefore, remanded this case back to the trial court to examine 28 U.S.C. § 1500 and the effect it has, if any, on the trial court's jurisdiction to consider Mr. Tindall's case.

The statute at 28 U.S.C. § 1500 provides:

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (2024).[7]

The application of 28 U.S.C. § 1500 analysis depends on whether a plaintiff, at the time a suit was filed in the Court of Federal Claims, also had a suit pending in another federal court "against the United States" or a person "acting or professing to act, directly or indirectly under the authority of the United States," based on substantially the same operative facts as the suit filed in this court, regardless of the relief sought. See 28 U.S.C. § 1500; see also United States v. Tohono O'Odham Nation, 563 U.S. 307, 311 (2011). The United States Court of Appeals for the Federal Circuit has stated that, "[t]o determine whether § 1500 applies, a court must make two inquiries: '(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action.'" Petro-Hunt, L.L.C. v. United States, 862 F.3d 1370,

---

[7] The court cites the current version of the statute at 28 U.S.C. § 1500, and notes that 28 U.S.C. § 1500 has not been revised since plaintiff filed his case in United States Tax Court on April 1, 2019 or when his original suit in the United States Court of Federal Claims was filed on November 16, 2021. Although plaintiff filed an amended complaint on May 13, 2025, the operative date for the application of 28 U.S.C. § 1500 is the date of the filing of the original complaint in the United States Court of Federal Claims. See Keene Corp. v. United States, 508 U.S. 200, 207 (1993); see also Res. Invs., Inc. v. United States, 785 F.3d 660, 666 (Fed. Cir. 2015); Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1548 (Fed. Cir. 1994), overruled in part on other grounds by United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011).

1381 (Fed. Cir. 2017) (alteration added) (quoting Res. Invs., Inc. v. United States, 785 F.3d at 664 (quoting Brandt v. United States, 710 F.3d 1369, 1374 (Fed. Cir. 2013))), cert. denied, 584 U.S. 977 (2018)."The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1548 (Fed. Cir. 1994) (discussing Keene Corp. v. United States, 508 U.S. 200), overruled in part on other grounds by United States v. Tohono O'Odham Nation, 563 U.S. at 315; see also Zainulabeddin v. United States, 138 Fed. Cl. 492, 511 (2018) (quoting Loveladies Harbor, Inc. v. United States, 27 F.3d at 1548). Indeed, "'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" Keene Corp. v. United States, 508 U.S. at 207 (quoting Mollan v. Torrance, 22 U.S. 537, 539 (1824) (Marshall, C.J.)) (other citations omitted) (noting that the Court of Federal Claims correctly applied section 1500 by "looking to the facts existing when Keene filed each of its complaints"). Section 1500 "bars jurisdiction in the CFC not only if the plaintiff sues on an identical claim elsewhere — a suit 'for' the same claim — but also if the plaintiff's other action is related although not identical — a suit 'in respect to' the same claim." United States v. Tohono O'Odham Nation, 563 U.S. at 312. The Supreme Court in Tohono O'Odham Nation explained, "two suits are for or in respect to the same claim when they are based on substantially the same operative facts." Id. at 315 (citing Keene Corp. v. United States, 508 U.S. at 206).

The Supreme Court has provided no set test to determine when, "two suits have sufficient factual overlap to trigger the jurisdictional bar." United States v. Tohono O'Odham Nation, 563 U.S. at 317. When analyzing the application of 28 U.S.C. § 1500 on issues of jurisdiction, the facts alleged in "the two co-pending suits need not be identical." Ministerio Roca Solida v. United States, 778 F.3d 1351, 1353 (Fed. Cir.) (citing United States v. Tohono O'Odham Nation, 563 U.S. at 312), cert. denied, 577 U.S. 974 (2015); see also Klamath Irrigation Dist. v. United States, 113 Fed. Cl. 688, 702 (2013) ("It is equally established that the facts alleged in the two complaints need not be identical; 'rather, the two complaints must stem from the same events.'" (quoting Cent. Pines Land v. United States, 99 Fed. CL 394, 401 (2011))). The assessment of how to apply Section 1500 must be on a case-by-case factual basis, analyzing the facts of the two federal lawsuits involved. The United States Supreme Court in Tohono O'Odham Nation, however, provided a general framework for consideration when applying Section 1500. In its decision, the Supreme Court stated in Tohono O'Odham Nation:

> The remaining question is whether the Nation's two suits have sufficient factual overlap to trigger the jurisdictional bar. The CFC [United States Court of Federal Claims] dismissed the action here in part because it concluded that the facts in the Nation's two suits were, "for all practical purposes, identical." 79 Fed. Cl. 645, 656 (2007). It was correct to do so. The two actions both allege that the United States holds the same assets in trust for the Nation's benefit. They describe almost identical breaches of fiduciary duty — that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example. Indeed, it appears that the Nation could have filed two

30

identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect. Under § 1500, the substantial overlap in operative facts between the Nation's District Court and CFC suits precludes jurisdiction in the CFC.

United States v. Tohono O'Odham Nation, 563 U.S. at 317 (alteration added).

As quoted above, the decision issued by the United States Court of Appeals for the Federal Circuit on April 11, 2023 in Mr. Tindall's case stated:

> Section 1500 of Title 28 provides that the Claims Court "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." The court lacks jurisdiction "where an earlier-filed suit is 'based on substantially the same operative facts' as the Claims Court suit, 'regardless of the relief sought in each suit.'" Acetris Health, LLC v. United States, 949 F.3d 719, 728–29 (Fed. Cir. 2020) (quoting United States v. Tohono O'Odham Nation, 563 U.S. 307, 317 (2011)). We determine whether the earlier-filed suit is "based on substantially the same operative facts" as the Claims Court case by assessing if the latter suit "would have been barred by res judicata if it had been brought in district court" under the res judicata principles in force when the predecessor to § 1500 was enacted. Id. at 729 (citation omitted).
>
> Under that standard, if the two suits arise "out of one and the same act or contract," or "the same evidence support[s] and establish[es] both the present and the former cause of action," the Claims Court suit cannot proceed. Tohono, 563 U.S. at 316 (citations omitted). In addition, we have held that the res judicata standard would not be satisfied where the earlier suit was filed in a tribunal that "had no colorable authority" to address it. Acetris, 949 F.3d at 729 & n.4.
>
> Applying § 1500 here is complex, and we decline to address it in the first instance. It is true that Mr. Tindall's suit in Tax Court, based on § 7623(b), was pending when he filed in Claims Court as to his § 7623(a) award. But even assuming the suits were based on the same "act or contract"—the IRS's final award letter—it is not clear that the Tax Court had colorable jurisdiction to review Mr. Tindall's filing. That court found that it lacked jurisdiction on two independent grounds. See S.A. 70–74. And if the Tax Court lacked colorable authority to consider Mr. Tindall's appeal, his earlier filing there would "not have preclusive effect under [§] 1500," and so § 1500 would not be a bar. Acetris, 949 F.3d at 729. We leave this question for the Claims Court to decide on remand.

Tindall v. United States, 2023 WL 2881312, at *3-*4 (alteration in original). In the case currently before this court, the Federal Circuit, therefore, instructed this court to determine

31

if 28 U.S.C. § 1500 should be applied barring jurisdiction over Mr. Tindall's claims in the United States Court of Federal Claims.

The defendant did not address the issue of 28 U.S.C. § 1500 in its briefs on the current motion to dismiss plaintiff's amended complaint.[8] Plaintiff, however, in his earlier filed motion for partial summary judgment argued that the "resolution of this remanded issue is [28 U.S.C. § 1500] both simple and straightforward," and references an earlier submission by plaintiff in which plaintiff argued "**as a matter of law, 28 U.S.C. §1500 does not apply to preclude this Court from having jurisdiction over Plaintiff's breach of contract action and constitutional violations claims against Defendant**," "because all of Plaintiff's eight (8) tax whistleblower claims were the subject of an award letter, none of them can have can have '*substantially the same set of operative facts*' as any other tax whistleblower claim." (all emphasis in original; footnote omitted; alteration added). Based on the Federal Circuit's remand directions, the court must, however, determine if 28 U.S.C. § 1500 applies to Mr. Tindall's case in the United States Tax Court when Mr. Tindall subsequently filed his case in the Court of Federal Claims before proceeding.

Initially, as quoted above, the statute at 28 U.S.C. § 1500 provides:

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. The plain text of the statute does not limit the application of 28 U.S.C. § 1500 to any specific court, and, instead, applies "to respect to which the plaintiff or his assignee has pending in any other court." Id. In a statutory interpretation analysis, "[t]he first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (alteration added) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)); see also Jimenez v. Quarterman, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). "When tasked with interpreting a statute, we start by exhausting all traditional tools of interpretation to determine its meaning. The starting point is the text itself." Obsidian Sols. Grp., LLC v. United States, 54 F.4th 1371, 1374 (Fed. Cir. 2022) (citing United States v. Hohri, 482 U.S. 64, 69 (1987); see also LaBonte v. United States, 43 F.4th 1357, 1367–68 (Fed. Cir. 2022) ("We begin our analysis, as we must, with the pertinent statutory language.") (citing Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies

---

[8] In the parties' earlier joint submission to the court, defendant represented that "defendant does not intend to reargue that 28 U.S.C. § 1500 removes this matter from this Court's jurisdiction."

in a careful examination of the ordinary meaning and structure of the law itself."); Nicely v. United States, 23 F.4th 1364, 1368 (Fed. Cir. 2022) ("When interpreting a statute, we 'begin with the language employed by Congress.'" (quoting Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist., 541 U.S. 246, 252 (2004)))).

The initial inquiry into the statutory text ceases "'if the statutory language is unambiguous and "the statutory scheme is coherent and consistent."'" Barnhart v. Sigmon Coal Co., 534 U.S. at 450 (quoting Robinson v. Shell Oil Co., 519 U.S. at 340 (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 240); see also King v. Burwell, 576 U.S. at 486 ("If the statutory language is plain, we must enforce it according to its terms.") (citing Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010)); Sucic v. Wilkie, 921 F.3d 1095, 1098 (Fed. Cir. 2019) (quoting Barnhart v. Sigmon Coal Co., 534 U.S. at 450); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d at 644; Arko Foods Int'l, Inc. v. United States, 654 F.3d 1361, 1364 (Fed. Cir. 2011) ("'[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute.'" (alteration in original) (quoting Millenium Lumber Distrib. Ltd. v. United States, 558 F.3d 1326, 1328 (Fed. Cir.), reh'g denied (Fed. Cir. 2009)); Am. Airlines, Inc. v. United States, 551 F.3d 1294, 1300 (Fed. Cir. 2008). Thus, when the "'statute's language is plain, "the sole function of the courts is to enforce it according to its terms[.]"'" Johnson v. United States, 529 U.S. 694, 723 (2000) (Scalia, J., dissenting) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 241 (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))); see also Jimenez v. Quarterman, 555 U.S. at 118; Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)); Bartels Tr. for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d 1357, 1361 (Fed. Cir.) (citing Sharp v. United States, 580 F.3d 1234, 1237 (Fed. Cir. 2009)), reh'g en banc denied (Fed. Cir. 2010); Candle Corp. of Am. v. United States Int'l Trade Comm'n, 374 F.3d 1087, 1093 (Fed. Cir.), reh'g and reh'g denied (Fed. Cir. 2004).

There does not appear to be an indication from the statutory language of 28 U.S.C. § 1500 that the application of 28 U.S.C. § 1500 would not apply to cases in the United States Court of Federal Claims when a plaintiff has a pending case previously filed in the United States Tax Court. Although there is little precedent on this issue, Judges of the United States Court of Federal Claims have found the application of 28 U.S.C. § 1500 to be a jurisdictional bar when a plaintiff in the United States Court of Federal Claims had a case previously pending in the United States Tax Court. See Jackson v. United States, 156 Fed. Cl. 738, 743 n.8 (2021); Western Mgmt., Inc. v. United States, 101 Fed. Cl. 105, 113-14 (2011), aff'd in part, remanded in part, 498 F. App'x 10 (Fed. Cir. 2012), reh'g denied (Fed. Cir. 2013). In Jackson v. United States, a Judge of the Court of Federal Claims held that this court lacked jurisdiction over claims that were currently pending in the United States Tax Court because the facts in the United States Tax Court were based on substantially the same operative facts as the suit filed by the same plaintiff in this court. The Judge in Jackson v. United States explained:

> Furthermore, to the extent that this claim challenging the $5,000 penalty is currently before the Tax Court, this Court does not have jurisdiction over that claim. Pursuant to 28 U.S.C. § 1500, this Court does not have

33

> jurisdiction over "any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States." Consequently, this Court cannot exercise jurisdiction over Plaintiff's claim to the extent that it is "based on the same operative facts and request[ ] the same relief," as it appears to be here. See Sanders v. United States, 34 Fed. Cl. 38, 44 (1995).

Jackson v. United States, 156 Fed. Cl. at 743 n.8 (internal citation omitted, omission and alteration in original). In Western Management, Inc. v. United States, another Judge of the United States Court of Federal Claims determined that a pending Tax Court filing at the time the suit was filed in the Court of Federal Claims was preclusive under 28 U.S.C. § 1500. The court explained:

> It is not disputed that WMI's [Western Management, Inc.] suit in the Tax Court regarding the tax periods at issue in this case was not final until the Ninth Circuit affirmed the Tax Court for the second time in the case's history in 2009. . . . It is also not disputed that WMI's claim regarding 1994 and the first quarter of 1995 in the Tax Court arose from the same operative facts as does WMI's claim in this court, which was filed in 2008, before the Tax Court action was final. Thus, WMI's claim in this court was "for or in respect to" a pending claim against the United States at the time it was filed, and thus this court has no jurisdiction over WMI's complaint.

Western Mgmt., Inc. v. United States, 101 Fed. Cl. at 113-14 (omission and alteration added; citations omitted). On appeal, however, in an unpublished decision, the Federal Circuit held that 28 U.S.C. § 1500 did not apply because "[i]n this case, the 'operative facts' are not the same." W. Mgmt., Inc. v. United States, 498 F. App'x 10, 14 n.3 (Fed. Cir. 2012) (alteration added).

In the Federal Circuit's April 11, 2023 decision in Mr. Tindall's appeal, the court noted that "[a]pplying § 1500 here is complex, and we decline to address it in the first instance." Tindall v. United States, 2023 WL 2881312, at *4 (alteration added). As noted above, there has been little trial court, and apparently no definitive, preclusive Circuit Court, decision on how 28 U.S.C. § 1500 is applicable to an overlap with cases in the United States Tax Court. The Federal Circuit in its Tindall decision also did not definitely suggest that 28 U.S.C. § 1500 could not bar a subsequent action filed in the United States Court of Federal Claims. Therefore, 28 U.S.C. § 1500 may or may not be applicable, after a fact intensive analysis, in situations in which a plaintiff first files suit in the United States Tax Court, and then subsequently files suit in the United States Court of Federal Claims at the time a Tax Court case is pending. According to the Federal Circuit, for the jurisdictional bar to apply, the issue is whether the "earlier-filed suit is 'based on substantially the same operative facts' as the Claims Court suit, 'regardless of the relief sought in each suit.'" Acetris Health, LLC v. United States, 949 F.3d at 728–29 (quoting United States v. Tohono O'Odham Nation, 563 U.S. at 317).

34

The Federal Circuit's April 11, 2023 decision in <u>Tindall v. United States</u> also identified a further consideration regarding whether 28 U.S.C. § 1500 applies in Mr. Tindall's case by stating:

> It is true that Mr. Tindall's suit in Tax Court, based on § 7623(b), was pending when he filed in Claims Court as to his § 7623(a) award. But even assuming the suits were based on the same "act or contract"—the IRS's final award letter—it is not clear that the Tax Court had colorable jurisdiction to review Mr. Tindall's filing. That court found that it lacked jurisdiction on two independent grounds. <u>See</u> S.A. 70–74. And if the Tax Court lacked colorable authority to consider Mr. Tindall's appeal, his earlier filing there would "not have preclusive effect under [§] 1500," and so § 1500 would not be a bar. <u>Acetris</u>, 949 F.3d at 729. We leave this question for the Claims Court to decide on remand.

<u>Tindall v. United States</u>, 2023 WL 2881312, at *3-*4 (alteration in original). The Federal Circuit in its <u>Tindall</u> decision cited <u>Acetris Health, LLC v. United States</u>, to further explain that "we have held that the res judicata standard would not be satisfied where the earlier suit was filed in a tribunal that 'had no colorable authority' to address it. <u>Acetris Health, LLC v. United States</u>, 949 F.3d at 729 & n.4," and the subsequent actions would not then be precluded. <u>See</u> <u>Tindall v. United States</u>, 2023 WL 2881312, at *4. In <u>Acetris Health, LLC v. United States</u>, the United States Court of Appeals for the Federal Circuit stated:

> <u>Tohono</u> held that, under section 1500, a claim filed at a first court can divest the Claims Court of a second, later-filed claim even where the first court would have lacked subject-matter jurisdiction over the second claim. <u>Tohono</u>, 563 U.S. at 315–17, 131 S. Ct. 1723. This represents a departure from the usual rule that res judicata cannot preclude a later-filed claim over which the first court lacked jurisdiction. <u>See</u> <u>Res. Invs.</u>, 785 F.3d at 666. But in <u>Tohono</u> the earlier-filed claims were properly filed in the district court; <u>Tohono</u> did not consider situations where, as here, the first court lacks jurisdiction over the earlier-filed claim. And we do not read <u>Tohono</u> to override the principle that a court cannot rule on the merits of—and thus res judicata effect cannot arise from—a claim over which the court has no colorable jurisdiction. Restatement (Second) of Judgments § 12 (1982) (no preclusion where "[t]he subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority"); <u>see</u> <u>also</u> <u>United States v. U. S. Fid. & Guar. Co.</u>, 309 U.S. 506, 512, 60 S. Ct. 653, 84 L. Ed. 894 (1940) (holding that res judicata did not apply where district court had no statutory authority to adjudicate a claim against the United States); <u>Christopher Vill., L.P. v. United States</u>, 360 F.3d 1319, 1326–33 (Fed. Cir. 2004).

<u>Acetris Health, LLC v. United States</u>, 949 F.3d 719, 729 n.4 (Fed. Cir. 2020) (alteration in original). As referenced in the <u>Acetris Health</u> decision, in <u>Resource Investments, Inc. v.</u>

United States, the Federal Circuit explained: "Under Tohono, the question is whether the second Claims Court takings suit would have been barred by res judicata if it had been brought in the district court" going by "res judicata principles as of 1868, when the predecessor to § 1500 was first enacted." Res. Invs., Inc. v. United States, 785 F.3d at 666; see also Trusted Integration, Inc. v. United States, 659 F. 3d 1159, 1168 n.4 (Fed. Cir. 2011) (noting that in United States v. Tohono O'Odham Nation, the United States Supreme Court "made clear that it is the tests in place at the time the predecessor to § 1500 was enacted by which we must be guided").

Plaintiff's United States Tax Court case was pending at the time Mr. Tindall filed his case in the United States Court of Federal Claims on November 16, 2021. The Tax Court subsequently dismissed plaintiff's claims in a December 7, 2022 decision for lack of jurisdiction. See Whistleblower 5903-19W v. Comm'r, No. 5903-19W. In its decision, the Tax Court explained:

> The Secretary has long had the discretion to pay awards to persons who provide information that aids in (1) detecting underpayments of tax or (2) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws. Sec. 7623(a). Congress enacted the Tax Relief and Health Care Act of 2006 (TRHCA), Pub. L. No. 109-432, div. A, sec. 406, 120 Stat. at 2958, to address perceived problems with the discretionary award regime. See Whistleblower 11332-13W v. Commissioner, 142 T.C. 396, 400 (2014). TRHCA section 406 amended section 7623 to require the Secretary to pay whistleblower awards under certain circumstances. TRHCA sec. 406(a)(1)(D), 120 Stat. at 2959 (adding to section 7623(b)). Under section 7623(b)(1) a whistleblower is entitled to a minimum award of 15% of the collected proceeds if the Commissioner proceeds with administrative or judicial action using information provided in a whistleblower claim. Whistle blower [sic] claims filed after TRHCA are subject to this Court's review. However, when a whistleblower submits a post-TRHCA claim using the same information the whistleblower provided to the WBO pre-THRCA [sic], this Court lacks jurisdiction. See Whistleblower 19860-15W v. Commissioner, T.C. Memo 2017-112; see also, Wolf v. Commissioner, T.C. Memo. 2007-133 (2007); Whistleblower I1332-13W v. Commissioner, 142 T.C. 396 (2014).
>
> Additionally, in Li v. Commissioner, 22 F.4th 1014 (D.C. Cir. Jan. 11, 2022), the Court of Appeals for the District of Columbia Circuit held that the Tax Court lacks jurisdiction of whistleblower cases involving threshold rejections of claims for whistleblower award where no judicial or administrative proceeding was commenced based on the whistleblower's information. That ruling is now final.

Whistleblower 5903-19W v. Comm'r, No. 5903-19W, at 2 (alterations added). Therefore, the Tax Court based its December 7, 2022 dismissal of plaintiff's claims for

lack of jurisdiction in the United States Tax Court, as quoted directly above, on "when a whistleblower submits a post-TRHCA claim using the same information the whistleblower provided to the WBO pre-THRCA [sic], this Court lacks jurisdiction." Whistleblower 5903-19W v. Comm'r, No. 5903-19W, at 2 (alteration added). The Tax Court's dismissal for lack of jurisdiction was affirmed by the United States Court of Appeals for the District of Columbia Circuit on October 12, 2023. See Whistleblower 5903-19W v. Comm'r, No. 23-1056, at 1. The United States Court of Appeals for the District of Columbia Circuit, thereafter, denied plaintiff's petition for rehearing and petition for rehearing en banc on December 21, 2023. Subsequently, the United States Supreme Court denied Mr. Tindall's writ for certiorari on October 7, 2024, and then denied plaintiff's petition for rehearing on November 18, 2024. The Tax Court's affirmed dismissal of plaintiff's claims for lack of jurisdiction demonstrates that the original court, in this case the United States Tax Court, lacked jurisdiction over plaintiff's claims and, therefore, 28 U.S.C. § 1500 does not preclude the subsequent complaint filed by Mr. Tindall the United States Court of Federal Claims on November 16, 2021.[9] See Acetris Health, LLC v. United States, 949 F.3d at 729 n.4; Res. Invs., Inc. v. United States, 785 F.3d at 666. This is consistent with the decision issued by the United States Court of Appeals for the Federal Circuit in plaintiff's appeal, which stated, "if the Tax Court lacked colorable authority to consider Mr. Tindall's appeal, his earlier filing there would 'not have preclusive effect under [§] 1500,' and so § 1500 would not be a bar." Tindall v. United States, 2023 WL 2881312, at *4 (quoting Acetris Health, LLC v. United States, 949 F.3d at 729 (alteration in original)). This court, therefore, concludes that Section 1500 does not act as a bar for plaintiff's claims in the United States Court of Federal Claims. Therefore, the court reviews Mr. Tindall's claims as set forth in his amended complaint now before this court.

Defendant's Motion to Dismiss Plaintiff's Amended Complaint

When examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2025); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court has stated:

While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid. [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual

---

[9] As explained above, although plaintiff filed an amended complaint on May 13, 2025, the operative date for the application of 28 U.S.C. § 1500 is the date of the filing of the original complaint in the United States Court of Federal Claims. See Keene Corp. v. United States, 508 U.S. at 207; see also Res. Invs., Inc. v. United States, 785 F.3d at 666; Loveladies Harbor, Inc. v. United States, 27 F.3d at 1548.

allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim that relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56, 570 (footnote and other citations omitted; omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–57, 570); Boyd v. United States, 134 F.4th 1348, 1352 (Fed. Cir. 2025); Cotter Corp., N.S.L. v. United States, 127 F.4th at 1366; First Mortg. Corp. v. United States, 961 F.3d 1331, 1339 (Fed. Cir. 2020); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied, (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354–55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (internal reference omitted)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Day v. United States, 176 Fed. Cl. 634, 638 (2025); Villalobos v. United States, 174 Fed. Cl. 741, 745 (2025); Avant Assessment, LLC v. United States, 159 Fed. Cl. 632, 636 (2022) ("As the Supreme Court explained, 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" (quoting Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570))).

"'[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002) (alteration added)). "Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992–93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even sua sponte, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing Foster v. Chatman, 578 U.S. 488, 495 (2016)) (alterations added); Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007); Santini v. United States, 173 Fed. Cl. 724, 726 (2024); Haddad v. United States, 152 Fed. Cl. 1, 16 (2021); Fanelli v. United States, 146 Fed. Cl. 462, 466 (2020).

"[T]he determination of jurisdiction is based only on the allegations in the plaintiff's 'well-pleaded complaint[.]'" Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 26 (2025) (alterations added) (quoting Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9–10 (1983)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. at 9–10), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011).

The Tucker Act, 28 U.S.C. § 1491 (2024), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); see also Me. Cmty. Health Options v. United States, 590 U.S. 296, 322 (2020); United States v. Mitchell, 463 U.S. 206, 216 (1983); Sanford Health Plan v. United States, 969 F.3d 1370, 1378 (Fed. Cir. 2020); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v.

United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); McCrory v. United States, 174 Fed. Cl. 311, 313 (2024); Gulley v. United States, 150 Fed. Cl. 405, 411 (2020); Kuntz v. United States, 141 Fed. Cl. 713, 717 (2019). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216–17 (omission added); see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must look beyond the Tucker Act to identify a substantive source of law that creates the right to recovery of money damages against the United States." (alteration added)); Jan's Helicopter Serv., Inc. v. F.A.A., 525 F.3d 1299, 1306 (Fed. Cir. 2008); Olson v. United States, 152 Fed. Cl. 33, 40–41 (2021); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019), appeal dismissed, No. 2019-2213, 2020 WL 8254415, at *1 (Fed. Cir. Jan. 29, 2020). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is properly lodged in the United States Court of Federal Claims, stating:

> The underlying monetary claims are of three types . . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007–08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket' " (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S. [Corp. v. United States], 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401–02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S. [Corp. v. United States], 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (alterations and first three omissions added; fourth omission in original); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Cotter Corp., N.S.L. v. United States, 127 F.4th 1353, 1366 (Fed. Cir. 2025); Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is] simply [a] jurisdictional provision[ ] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)." (alterations added; citations omitted); see also Me. Cmty. Health Options v. United States, 590 U.S. at 322. "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d at 1308 (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Olson v. United States, 152 Fed. Cl. at 41; Downey v. United States, 147 Fed. Cl. 171, 175 (2020) ("And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States." (citations omitted)).

As described above, in plaintiff's amended complaint, plaintiff alleges this court has jurisdiction over his various claims, including his two alleged breach of contract claims. He alleges that defendant breached his alleged contract arising from the March 5, 2019 Final Award Decision Letter by failing to pay him the full amount to which he is entitled and by delaying the payment he was owed. Plaintiff claims:

> [T]he U.S. Court of Federal Claims has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1491(a)(1), because the basis for this dispute is defendant's willful breaches of the two (2) tax whistleblower contracts between the parties by defendant's attempts to pay less than the full amount of the two (2) §7623(a) awards that defendant determined to be owing and defendant's refusal to pay the two (2) §7623(a) awards for nearly six (6) years after defendant determined that they were final and owing.

(alteration added; citations omitted; footnotes omitted). Alternatively, in his amended complaint, plaintiff again alleges "four violations of plaintiff's constitutional rights (two violations of the Takings Clause and two violations of the Due Process Clause)." He claims that defendant committed unconstitutional takings by failing to pay plaintiff his

41

award and further failing to pay him just compensation for the time defendant possessed his award, and "defendant has failed to provide any due process surrounding its exercise of its power of eminent domain when it took possession of plaintiff's two (2) discrete §7623(a) awards that defendant determined was owed to plaintiff." Plaintiff argues that

> the U.S. Court of Federal Claims has jurisdiction over this dispute pursuant to 28 U.S.C. §1491(a)(1), because the basis for this dispute is defendant's taking of plaintiff's property (to wit, plaintiff's two (2) §7623(a) awards and the related income streams) without paying plaintiff 'just compensation', as required by the 5th Amendment to the U.S. Constitution, which states "*No person shall . . . be deprived of life, liberty, or property, without due process of law; **nor shall private property be taken for public use, without just compensation***".

(emphasis and omission in original; citations omitted). Plaintiff further states that he was unable to appeal defendant's decision to not pay plaintiff the full award he received from the Whistleblowers Office, which plaintiff also argues constitutes a constitutional due process violation.

As indicated above, in response to the amended complaint, defendant filed a motion to dismiss plaintiff's amended complaint for a lack of subject matter jurisdiction under RCFC 12(b)(1) and for failure to state a claim under RCFC 12(b)(6). Defendant argues:

> First, the amended complaint fails to assert a claim within this Court's jurisdiction. The constitutional claims he asserts have already been dismissed [in this court's first opinion in <u>Tindall v. United States</u>, No. 21-2200T (Fed. Cl. Oct. 25, 2022)] and his breach of contract claim is either moot or fails to non-frivolously allege the existence of a contract. Second, even if this Court has jurisdiction, this Court should nonetheless dismiss the amended complaint under RCFC 12(b)(6). Whether framed as an unconstitutional taking or a breach of contract, Mr. Tindall has failed to state a claim upon which relief can be granted.

(alteration added).

<u>Breach of Contract Claims</u>

In his amended complaint, plaintiff claims that two contracts exist between him and defendant as a result of his two successful 26 U.S.C. § 7623(a) claims that are the basis of the award in the March 5, 2019 Final Award Decision Letter to plaintiff. Plaintiff alleges that the contracts existed from the moment defendant issued the March 5, 2019 Final Award Decision Letter dated March 5, 2019. Plaintiff argues defendant's conduct amounts to two breaches of contract, stating:

> No Award Payment for 2,151 Days (Takings Violation and Breach of Contract #1)
> Despite there being no avenue to appeal defendant's IRS WBO's determination specific to plaintiff's §7623(a) claims, in the 2,151-days subsequent to that determinations [sic], defendant still refused to pay any of the §7623(a) award amounts to plaintiff.
>
> Partial Payment of $654,380.01 on January 23, 2025 (Breach of Contract #2)
> On January 23, 2025, 2,151 days after the issuance of its Award Letter, defendant made a partial payment of plaintiff's §7623(a) awards ($654,380.01), which was $39,554.25 less than the final amount of the §7623(a) awards that defendant determined was due and payable in its Award Letter, dated March 5, 2019.

(alteration added). In response, defendant argues that Mr. Tindall has not alleged a breach of contract claim within this court's jurisdiction.

Regarding both breach of contract allegations in plaintiff's amended complaint, to have privity of contract with the United States government, and, therefore, to invoke jurisdiction in the United States Court of Federal Claims for an alleged breach of contract claim, plaintiff "must show that either an express or implied-in-fact contract underlies [the] claim." Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (alteration added); see also Park Props. Assocs., L.P. v. United States, 916 F.3d 998, 1002 (Fed. Cir. 2019), cert. denied, 589 U.S. 1133 (2020). "An express contract '"must be manifested by words, either oral or written, which contains agreement and/or mutual assent."'" Frankel v. United States, 118 Fed. Cl. 332, 335 (2014) (quoting Essen Mall Props. v. United States, 21 Cl. Ct. 430, 439 (1990) (quoting Webster Univ. v. United States, 20 Cl. Ct. 429, 433 (1990))), aff'd, 842 F.3d 1246 (Fed. Cir. 2016).

As recently explained by the United States Court of Appeals for the Federal Circuit:

> There are four requirements to form a contract with the Government: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." Anderson v. United States, 344 F.3d 1343, 1353 (Fed. Cir. 2003). These elements apply to both express and implied-in-fact contracts.

Boyd v. United States, 134 F.4th 1348, 1352 (Fed. Cir. 2025); see also Fairholme Funds, Inc. v. United States, 26 F.4th 1274, 1293-94 (Fed. Cir. 2022), cert. denied, 143 S. Ct. 563 (2023); Columbus Reg'l Hosp. v. United States, 990 F.3d 1330, 1339 (Fed. Cir. 2021).

43

Defendant argues:

> Mr. Tindall has not alleged any of the essential elements of a contract. He bases his entire claim around the March 5, 2019 Final Award Decision letter. He alleges that this letter created two contracts between the defendant and Mr. Tindall. But he has made no allegations as to the parties' intent to contract, the existence of an offer and acceptance, or any government representative with actual authority to bind the United States in contract.

(internal references omitted).

Regarding 26 U.S.C. § 7623 claims, although the statute "at 26 U.S.C. § 7623 and its implementing regulation, 26 C.F.R. § 301.7623–1(a), alone do not contractually bind the Government," upon filing a claim with the IRS, a binding contract for payment may be created once a whistleblower submits information to the Whistleblower Office and the government fixes a specific sum for the whistleblower award. See Krug v. United States, 168 F.3d 1307, 1309 (Fed. Cir. 1999) (citing Merrick v. United States, 846 F.2d 725, 726 (Fed. Cir. 1988)). The United States Court of Appeals for the Federal Circuit in Krug v. United States explained, "pursuant to § 7623 and the regulation, the Government invites offers for a reward; the informant makes an offer by his conduct; and the Government accepts the offer by agreeing to pay a specific sum." Krug v. United States, 168 F.3d at 1309 (emphasis in original); see also Cambridge v. United States, 558 F.3d 1331, 1336 (Fed. Cir. 2009); Merrick v. United States, 846 F.2d at 726 ("an enforceable contract exists when the parties fix the award amount"). For 26 U.S.C. § 7623 claims, a government official authorized to bind the government in contract must fix the award amount for the government to be contractually bound to pay the award. See Merrick v. United States, 846 F.2d at 726 (finding a contract because the plaintiff negotiated his award amount with Acting District Director of the IRS); Amsinger v. United States, 99 Fed. Cl. 263-64 (2011) ("In essence, the plaintiff seeking a reward must allege that an IRS official with sufficient authority negotiated and fixed a specific reward amount in exchange for the information offered by the plaintiff" and "[o]nly a service director or a district director of the IRS may enter into binding contract with a reward claimant." (alteration added); Dacosta v. United States, 82 Fed. Cl. 549, 557 (2008).

As reflected above, after plaintiff submitted his whistleblower information to the Whistleblower Office, between 2004 and 2015, defendant sent a January 31, 2019 Preliminary Award Decision Letter to plaintiff, which stated, in part:

> The Whistleblower Office has reached a preliminary award recommendation under Internal Revenue Code 7623(a) based on your Form 211, Application for Award for Original Information dated 6/13/2004, this includes any additional information you may have provided in relation to the Form 211. Enclosed is a Summary Report that explains our preliminary award recommendation in the amount of $650,910.34. If there are any changes to the recommended award percentage or the amount of collected proceeds as reflected in the Summary Report, then the

Whistleblower Office will send you a revised Preliminary Award Recommendation Letter.

The January 31, 2019 Preliminary Award Decision Letter continued:

The Budget Control Act of 2011, as amended by the American Tax Relief Act of 2012, requires that automatic reductions be made with respect to certain government payments. These required reductions include a reduction to awards paid under Internal Revenue Code section 7623. The required reduction percentage is determined annually by the Office of Management and Budget for the year in which payments are made. As a result, your preliminary recommended award reflects a reduction in accordance with the Office of Management and Budget guidance for the 2019 Fiscal Year reduction amount of 6.2%. The final award amount will use the reduction required in the year of payment.

In response, plaintiff sent the IRS a letter objecting to the January 31, 2019 Preliminary Award Decision Letter, and checked the box: "I disagree with the preliminary award recommendation." Plaintiff's February 6, 2019 letter stated:

I received the Preliminary Award Letter, dated January 31, 2019, which proposes a preliminary net-net award of $650,910.34.

I appreciate your ability to quickly process the Preliminary Award Letter following the chaos of the recent federal shutdown. With the issuance of the Preliminary Award Letter, I am optimistic about where we are on the remaining timeline and hope we can resolve our remaining differences quickly to bring this project to a satisfactory conclusion.

As requested, I am returning a signed "*Response to Summary Report*" (page 6 of your letter) declining that preliminary award amount (*see enclosed*).

(capitalization and emphasis in original). In its letter, plaintiff argued that it was improper for the agency to apply a reduction to his award under the Budget Control Act of 2011 and wrote:

As some of my previous correspondence has indicated, I am not in agreement with the position of the IRS Whistleblower's Office that the Budget Control Act of 2011 creates a Sequestration Haircut that applies to Whistleblower Awards.

Quite simply, the awards are paid from collected proceeds, which are not rationally part of the US budget, because these collected proceeds are

45

something the US government would not have received but for the involvement of the IRS whistleblower.

(capitalization in original). Plaintiff's February 6, 2019 letter continued:

Moreover, and specific to my case, the calculation is determined by the statutes in effect in 2004, which predate the Budget Control Act of 2011. Thus, any attempt to change that calculation impacts my property interest and violates the Taking Clause of the US Constitution (our 5th Amendment provides that *"nor shall private property be taken for public use, without just compensation"*).

(capitalization and emphasis in original). At the end of the February 6, 2019 letter, plaintiff included a section titled "**FOR SETTLMENT PURPOSES ONLY**," which stated:

Over the last fifteen (15) years, I have had the occasion to complete my own tentative award calculation. **In all cases, my estimates have been limited by the $2 million limitation contained in the 2004 statute**.[10] Once that limit has been reached, then there is no need to continue to monitor the taxpayers' accounts, because no more award monies can be paid.

Given the discrepancies identified above (the inapplicability of 2011 Sequestration Haircut, the impact of reduced net operating loss attributes on subsequent collected proceeds, your affirmative obligation to continue to monitor those collections and pay subsequent awards, and the increased proper award percentage), **I propose that your Final Determination Letter reflect the application of the $2 million limitation and limit my award to $2 million, which will bring this project to a mutually satisfactory resolution of all our outstanding issues (*see enclosed*).**

(emphasis and capitalization in original). Plaintiff's February 6, 2019 letter continued: "Alternatively, our collective failure to reach a mutually satisfactory resolution will require numerous definitional and process oversights to be publicly displayed and judicially resolved (with certainty) – none of which will be resolved in favor of the IRS."

On March 5, 2019, the IRS sent plaintiff a final award decision letter advising plaintiff that he was entitled to $650,910.34, the same amount as included in the preliminary award recommendation. The March 5, 2019 Final Award Decision Letter stated:

---

[10] The $2,000,000.00 amount is not reflected in plaintiff's original complaint or in his amended complaint.

The Whistleblower Office has considered your Form 211, Application for Award for Original Information, dated June 13, 2004, this includes any additional information you may have provided in relation to the Form 211. On January 31, 2019, the Whistleblower Office sent you a preliminary award recommendation. The Whistleblower Office reviewed the comments you provided on the preliminary award recommendation. The Whistleblower Office has made a final decision that you are entitled to an award of $ 650,910.34.

(capitalization in original). As with the January 31, 2019 Preliminary Award Decision Letter, the March 5, 2019 Final Award Decision Letter explained:

The Budget Control Act of 2011, as amended by the American Tax Relief Act of 2012, requires that automatic reductions be made with respect to certain government payments. These required reductions include a reduction to awards paid under Internal Revenue Code section 7623. The required reduction percentage is determined annually by the Office of Management and Budget for the year in which payments are made. As a result, your award reflects a reduction in accordance with the Office of Management and Budget guidance for the 2019 Fiscal Year reduction amount of 6.2%.

In the March 5, 2019 Final Award Decision Letter, the IRS attached a "Determination Report" showing the methodology the agency had used to calculate the final dollar award, which was identical to the methodology in the preliminary award decision letter. The March 5, 2019 Final Award Decision Letter also notified plaintiff that "[t]he Whistleblower Office will process the award for payment as promptly as the circumstances permit." (alteration added). As explained above, unlike the preliminary award decision letter, there was not an option for plaintiff to indicate that he agreed or disagreed with the final award.

On March 21, 2019, plaintiff sent the IRS a letter again objecting to the final award decision. Plaintiff stated in this letter: "I received your 'Final Award Letter', dated March 5, 2019, which proposed an award of $650,910.34, which was unchanged from your preliminary offer and failed to appropriately consider the supplemental information I provided in mid-February 2019." In his March 21, 2019 letter, plaintiff raised similar concerns to those in his letter objecting to the preliminary award recommendation. Plaintiff concluded his March 21, 2019 letter by advising the agency:

These are some of the legal issues that will be resolved judicially if you fail to reconsider them and update your 'Final Award Letter', dated March 5, 2019.

Do you really want a public court opinion on these issues that will bind you for all whistleblower awards?

47

**If I fail to receive a corrected 'Final Award Letter' that incorporates these changes by Tuesday, April 2, 2019, then I will have no choice but to allow the US Tax Court to resolve these issues**.

(emphasis in original).

As reflected above, Mr. Tindall's asserted basis for the two contracts he alleged he had entered into with the government is the March 5, 2019 Final Award Decision Letter. Mr. Tindall does not attempt to show that the four requirements to form a contract with the United States were met: "'(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States.'" Boyd v. United States, 134 F.4th at 1352 (quoting Anderson v. United States, 344 F.3d at 1353). Significantly, neither the March 5, 2019 Final Award Decision Letter, nor Mr. Tindall's March 21, 2019 letter reflect an agreement that there was a final amount agreed to and accepted by both parties. Mr. Tindall's actions demonstrate that he did not agree with the proposed amount. Plaintiff's February 6, 2019 letter plainly stated: "I am not in agreement with the position of the IRS Whistleblower's Office that the Budget Control Act of 2011 creates a Sequestration Haircut that applies to Whistleblower Awards," and continued: "Alternatively, our collective failure to reach a mutually satisfactory resolution will require numerous definitional and process oversights to be publicly displayed and judicially resolved (with certainty) – none of which will be resolved in favor of the IRS." Plaintiff's March 21, 2019 letter also responded to the March 5, 2019 Final Award Decision Letter by advising the agency: "These are some of the legal issues that will be resolved judicially if you fail to reconsider them and update your 'Final Award Letter', dated March 5, 2019." In addition, plaintiff's conduct after the March 5, 2019 Final Award Decision Letter further reflects the lack of an agreement between the parties, as plaintiff subsequently filed his case in the United States Tax Court contesting the amount in the March 5, 2019 Final Award Decision Letter. Even after the dismissal of Mr. Tindall's United States Tax Court petition was finally resolved on November 18, 2024, following Mr. Tindall's appeal to the United States Court of Appeals for the District of Columbia Circuit, which had denied plaintiff's petition for rehearing and petition for rehearing en banc, and then Mr. Tindall's appeal to the United States Supreme Court, which denied Mr. Tindall's writ for certiorari, and then denied Mr. Tindall's petition for rehearing, plaintiff continued to assert that the defendant had not sufficiently met his requirements for payment. As argued by the defendant, "Mr. Tindall has not accepted the Government's offer and, on the contrary, has rejected the specific terms of the March 5, 2019 Final Award Decision letter." Moreover, Mr. Tindall continued to contest IRS determinations in the case currently before the court, even after he was paid for certain claims he asserted. The foregoing demonstrates that in the case currently before the court, no contract came into existence between Mr. Tindall and the United States as a result of the March 5, 2019 Final Award Decision Letter. See Amsinger v. United States, 99 Fed. Cl. at 263-64.

Even if the court were to assume that the March 5, 2019 Final Award Decision Letter could represent a contract entered into between Mr. Tindall and the United States, because an IRS official with sufficient authority fixed a specific reward amount to Mr. Tindall, see Merrick v. United States, 846 F.2d at 726; Amsinger v. United States, 99 Fed.

Cl. at 263, plaintiff still has not demonstrated a breach of contract by the government. As indicated above, plaintiff's first claim for breach of contract in plaintiff's amended complaint is based on an alleged delay of payment by the defendant to the plaintiff. Plaintiff alleges that defendant breached the contract established in the March 5, 2019 Final Award Decision Letter by delaying payment for 2,151 days, stating:

> No Award Payment for 2,151 Days (Takings Violation and Breach of Contract #1)
> Despite there being no avenue to appeal defendant's IRS WBO's determination specific to plaintiff's §7623(a) claims, in the 2,151-days subsequent to that determinations [sic], defendant still refused to pay any of the §7623(a) award amounts to plaintiff.

(emphasis in original; alteration added). Plaintiff argues that defendant admitted that defendant had "been in the possession, control and use of plaintiff's property (i.e., plaintiff's §7623(a) award monies) since March 5, 2019" through its "partial payment" of the award on January 23, 2025. As described in defendant's motion to dismiss plaintiff's amended complaint:

> On October 12, 2023, the D.C. Circuit issued a decision affirming the Tax Court's order of dismissal. Following subsequent appeals, the litigation involving the dismissal of Mr. Tindall's Tax Court petition finally resolved on November 18, 2024, following the Supreme Court's denial of Mr. Tindall's petition for rehearing. After the Supreme Court's denial of Mr. Tindall's petition for rehearing, all appeals of the WO's [Whistleblower's Office] determination were now "final" for purposes of the applicable regulations, see 26 C.F.R. § 301.7623-4(d)(1), and the IRS WO began immediately processing Mr. Tindall's final award.

(internal references omitted; alteration added). In the parties' joint submission to the court, the parties explained:

> On January 23, 2025, Mr. Tindall informed counsel for defendant that the IRS had deposited a payment of $497,328.81 into his bank account.
>
> The amount paid to Mr. Tindall reflects a 10% award on $6,939,342.59, the total amount collected based on information provided by Mr. Tindall, minus a 5.7% sequestration reduction for fiscal year 2025 ($39,554.25) applied by defendant and disputed by Mr. Tindall, and minus a 24% Federal income tax withholding applied to the remainder ($157,051.20), reconciling to the net payment of $497,328.81 received by Mr. Tindall.

(internal references omitted). Plaintiff bases his claim for breach on the text of the March 5, 2019 Final Award Decision Letter, specifically emphasizing that "'*[t]he Whistleblower Office will process the award for payment as promptly as the circumstances permit*.'" (alteration and emphasis in original). Plaintiff argues that the payment taking place in

49

January of 2025 after the issuance of the March 5, 2019 Final Award Decision Letter "is not 'promptly' paying plaintiff what plaintiff is owed."

In response, defendant points out that any delay in payment was caused by plaintiff's own actions, as the applicable regulations barred defendant from paying plaintiff until his United States Tax Court petition was fully resolved on November 18, 2024. Specifically, defendant cites 26 C.F.R. § 301.7623-4(d)(1) to state that payment cannot be made until "all appeals of the Whistleblower Office's determination are final." In reference to 26 C.F.R. § 301.7623-4(d)(1), defendant further stated that "[a]ccordingly, defendant had no obligation to pay Mr. Tindall the award before resolution of that appeal, and, in fact, was unable to do so under the applicable regulations." (alteration added). Defendant stated that "[f]ollowing the Supreme Court's dismissal of Mr. Tindall's petition for rehearing, the IRS WO immediately began processing Mr. Tindall's award for payment." (alteration added).

Plaintiff subsequently argues in plaintiff's response to the motion to dismiss plaintiff's amended complaint that "there is no avenue for plaintiff to appeal defendant's determinations specific to plaintiff's §7623(a) claims. **Thus, on March 5, 2019, defendant's determinations specific to plaintiff's §7623(a) claims were utterly final, non-appealable, and were never appealed to any court.**" (footnote omitted, emphasis in original).[11] According to plaintiff, the defendant did not need to wait for the final decision of the United States Tax Court because "**no appeals are possible from a §7623(a) award determination**." (emphasis in original). In response, defendant argues:

> IRS was unable to pay the award to Mr. Tindall until his appeal of the Whistleblower Office determination (which arose from the same March 2019 Final Award decision letter) was final. See 26 C.F.R. § 301.7623-4(d)(1). Because IRS paid Mr. Tindall in accordance with the applicable regulations, and in accordance with the terms of the March 2019 Final Award decision letter (which in any event did not establish a contract), Mr. Tindall has not plausibly alleged a claim based on this passage of time.

The court also notes that the March 5, 2019 Final Award Decision Letter emphasized that "[t]he Whistleblower Office will process the award for payment as

---

[11] The defendant correctly points out in its reply brief to the motion to dismiss plaintiff's amended complaint that plaintiff's argument

> ignores the fact that both the alleged contract and his Tax Court petition arise from the March 2019 Final Award decision letter. And although Mr. Tindall is correct to observe that this letter issued an award under § 7623(a) and that such awards are generally not appealable, he ignores the fact that in the Tax Court, he explicitly alleged that the award letter mislabels certain § 7623(b) claims as § 7623(a) claims.

(emphasis in original; internal reference omitted).

50

promptly as the circumstances permit," with no specific resolution date promised. Moreover, the regulation at 26 C.F.R. § 301.7623-4, describes the specific steps for determining and paying 26 U.S.C. § 7623 awards, and, in fact, bars defendant from paying the whistleblower award until surrounding appeals are finalized. Pursuant to 26 C.F.R. § 301.7623-4(d)(1):

> Payment of an award will be made as promptly as the circumstances permit, but not until there has been a final determination of tax with respect to the action(s), as defined in paragraph (d)(2) of this section, the Whistleblower Office has determined the award, and all appeals of the Whistleblower Office's <u>determination are final or the whistleblower has executed an award consent form agreeing to the amount of the award</u> and waiving the whistleblower's right to appeal the determination.

26 C.F.R. § 301.7623-4(d)(1) (2025) (emphasis added).[12] According to the quoted regulation, the government cannot complete payment of an award until (1) there is a final determination of the award and (2) either all appeals of the award determination are resolved or the whistleblower has waived the right to appeal the award. The court notes that these regulations are designed to ensure that the award amount is calculated and finalized before payment is made to the whistleblower. The governing regulatory framework explicitly requires that "all appeals of the Whistleblower Office's determination are final" before an award is paid. 26 C.F.R. § 301.7623-4(d)(1). Plaintiff's decision to file suit in the United States Tax Court resulted in the award determination not being final. <u>See</u> <u>id.</u> Only after the United States Supreme Court denied plaintiff's petition for rehearing of the Supreme Court's October 7, 2024 decision on November 18, 2024 was the determination of the award final. <u>See</u> <u>id.</u> Plaintiff's argument mischaracterizes the first time defendant could issue a payment to plaintiff and plaintiff's argument fails. Only 65 days, not 2,151 days, had passed since the Tax Court action was finalized and the award became payable when the government paid plaintiff the lump-sum award to which plaintiff was entitled on January 22, 2025. Such a two-month timeframe is consistent with the regulatory requirement of 26 C.F.R. § 301.7623-4(d)(1) to "process the award for payment as promptly as the circumstances permit," 26 C.F.R. § 301.7623-4(d)(1), and did not cause a breach of contract, even if a contract had come into existence.

Additionally, plaintiff's second breach of contract claim alleges that even when defendant did pay plaintiff on January 23, 2025, a breach still occurred because the amount paid was reduced, albeit, as discussed above, by the statutorily mandated deductions. Plaintiff argues:

> <u>Partial Payment of $654,380.01 on January 23, 2025 (Breach of Contract #2)</u>
> On January 23, 2025, 2,151 days after the issuance of its Award Letter, defendant made a partial payment of plaintiff's §7623(a) awards ($654,380.01), which was $39,554.25 less than the final amount of the

---

[12] As reflected above, plaintiff did not agree with the proposed amount of the award.

§7623(a) awards that defendant determined was due and payable in its Award Letter, dated March 5, 2019.

(emphasis in original).[13]

The $39,554.25 plaintiff claims was missing from his award payment amount is attributable to a Budget Control Act reduction, which plaintiff should have been aware of, as it was specifically referenced in both in the January 31, 2019 Preliminary Award Decision Letter and in the March 5, 2019 Final Award Decision Letter. The Budget Control Act of 2011 requires automatic reductions to certain government spending through what is referred to as "sequestration," which "refer[s] to or mean[s] the cancellation of budgetary resources provided by discretionary appropriations or direct spending law." 2 U.S.C. §§ 900(c)(2), 901a (alterations added). The Office of Management and Budget calculates the applicable percentage for sequestration each fiscal year as outlined in the Budget Control Act of 2011, as amended by the American Taxpayer Relief Act of 2012. 2 U.S.C.A. section 901a (2025). The applicable rate for the mandatory reduction is 5.7% for the 2025 fiscal year. Applying this reduction to the overall award amount of $693,934.26 reduced the total amount that plaintiff was paid by $39,554.25. Defendant also points out that the requirements of the Budget Control Act, as amended by the American Taxpayer Relief Act, which is often referred to as a "sequestration haircut," was explicitly described in both the January 31, 2019 Preliminary Award Decision Letter and the March 5, 2019 Final Award Decision Letter. Defendant asserts:

Assuming that the March 5, 2019, Final Award Decision letter created an enforceable contract, defendant's application of a sequestration reduction was not a breach of that contract. Indeed, the letter specifically advised Mr. Tindall that the defendant would apply this reduction. The March 5, 2019, Final Award Decision letter further informed Mr. Tindall that "[t]he final award will use the reduction required in the year of payment." The "year of payment" was 2025, and during that fiscal year, the applicable sequestration rate was 5.7%. Accordingly, defendant applied a sequestration reduction of $39,554.25.

(alteration in original; footnote and citations omitted).

The March 5, 2019 Final Award Decision Letter sent to Mr. Tindall stated:

The Budget Control Act of 2011, as amended by the American Tax Relief Act of 2012, requires that automatic reductions be made with respect to certain government payments. These required reductions include a reduction to awards paid under Internal Revenue Code section 7623. The

---

[13] The court notes that, although plaintiff states in his amended complaint he was paid a lump sum of $654,380.01, the parties' joint submission to the court stated that "[o]n January 23, 2025, Mr. Tindall informed counsel for defendant that the IRS had deposited a payment of $497,328.81 into his bank account." (alteration added).

required reduction percentage is determined annually by the Office of Management and Budget for the year in which payments are made. As a result, your award reflects a reduction in accordance with the Office of Management and Budget guidance for the 2019 Fiscal Year reduction amount of 6.2%.

The Budget Control Act of 2011, as amended by the American Tax Relief Act of 2012 specifies that the reduction percentage will be determined by the Office of Management and Budget in the year of the payment. Budget Control Act of 2011, Pub. L. No. 112-25, §§ 101–103, 125 Stat. 240, 241–46, as amended by American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, § 901, 126 Stat. 2313, 2370 (codified as amended at 2 U.S.C. § 901(a) (2012)). As reflected above, a government official does not have authority to ignore relevant statutory or regulatory limitations on his or her authority. See Baude v. United States, 955 F.3d 1290, 1306 (Fed. Cir. 2020) ("'It has long been established that government officials must follow their own regulations.'" (citing Voge v. United States, 844 F.2d 776, 779 (Fed. Cir. 1988)), Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997) ("In addition, government contracts must comply with statutorily sanctioned regulations."). The government is bound to effect the sequestration reduction mandated by statute to any award to plaintiff. Plaintiff's award was subject to the sequestration reduction rate in effect in the year of payment mandated by the Budget Control Act as stated in the March 5, 2019 Final Award Decision Letter sent by the defendant to Mr. Tindall. Therefore, the reductions imposed by defendant on plaintiff's award are consistent with the governing statutory framework in the Budget Control Act of 2011, as well as the language of the March 5, 2019 Final Award Decision Letter. Based on the statutory language in the Budget Control Act of 2011, as amended by the American Taxpayer Relief Act of 2012, and as explained in the language of the March 5, 2019 Final Award Decision Letter, plaintiff cannot successfully establish that defendant breached a contract by applying the 5.7% Budget Control Act reduction.

Takings Claims

As described above, in his November 16, 2021 original complaint in the United States Court of Federal Claims, plaintiff claimed this court had jurisdiction over his constitutional claims pursuant to the Fifth Amendment to the United States Constitution and plaintiff alleged "two violations of the Takings Clause and two violations of the Due Process Clause." With regards to his two takings claims specifically, plaintiff asserted that, "[q]uite simply, Defendant is in possession of Plaintiff's IRC §7623(a) award monies with no legal justification for its possession whatsoever. **That is the very definition of an unconstitutional taking prohibited by the Fifth Amendment**." (emphasis in original; alteration added).

Prior to the remand by the United States Court of Appeals for the Federal Circuit to the United States Court of Federal Claims, the trial court's October 25, 2022 Opinion found that plaintiff's takings claims should be dismissed because plaintiff had failed to concede the validity of the government's actions, plaintiff did had demonstrated a valid property interest in the items allegedly seized by the government, and plaintiff had not

53

shown that the items were taken for public use. The court concluded in its October 25, 2022 Opinion:

> Defendant correctly argues that plaintiff has failed to concede the validity of the government's actions as a basis for proceeding with his takings claims. . . . In his complaint, plaintiff has not demonstrated a valid property interest in the item allegedly seized by the government, or demonstrated that the items were taken for a public use. For all the above reasons, plaintiff's Fifth Amendment takings claims fail.

Tindall v. United States, 2022 WL 19730768, at *15 (alteration added).

In plaintiff's amended complaint currently before this court, plaintiff again alleges that defendant's conduct has amounted to Fifth Amendment takings. Similar to his original complaint, plaintiff's amended complaint also asserts that this court has jurisdiction over his takings claims. Plaintiff alleges:

> In the alternative, the U.S. Court of Federal Claims has jurisdiction over this dispute pursuant to 28 U.S.C. §1491(a)(1), because the basis for this dispute is defendant's taking of plaintiff's property (to wit, plaintiff's two (2) §7623(a) awards and the related income streams) without paying plaintiff 'just compensation', as required by the 5[th] Amendment to the U.S. Constitution, which states "*No person shall . . . be deprived of life, liberty, or property, without due process of law;* **nor shall private property be taken for public use, without just compensation**".

(footnotes omitted; emphasis and omission in original). In his amended complaint, plaintiff alleges that defendant committed two acts of unconstitutional takings by withholding his award for his two successful 26 U.S.C. § 7623(a) claims. Plaintiff argues: "Despite there being no avenue to appeal defendant's IRS WBO's determination specific to plaintiff's §7623(a) claims, in the 2,151-days subsequent to that determinations [sic], defendant still refused to pay any of the §7623(a) award amounts to plaintiff." (alterations added). In response, defendant points out:

> In this case, this Court properly dismissed Mr. Tindall's alleged takings and due process claims in 2022. More than two years after this Court's ruling, Mr. Tindall continues to attempt to reassert these already-dismissed Fifth Amendment claims. Mr. Tindall's two-year attempt to continuously reassert already-dismissed claims is without merit and unduly strains the resources of this Court and the Government. This Court's holding regarding Mr. Tindall's constitutional claims was correct in 2022 and it remains correct today. Under the law-of-the-case doctrine, that holding "should continue to govern the same issues in subsequent stages in the same case." Etchegoinberry, 132 F.4th at 1378 (Fed. Cir. 2025) (quoting Arizona v. California, 460 U.S. 605, 618 (1983) [sic]. Accordingly, these already-dismissed constitutional claims cannot establish this Court's jurisdiction.

54

Furthermore, Mr. Tindall has not identified any reason why this Court should revisit its prior holdings regarding Mr. Tindall's constitutional claims. Indeed, there is none. There is no "new and different evidence" or any "contradictory ruling by a controlling authority." Wolfchild, 72 Fed. Cl. at 524. Nor was the Court's prior holding "clearly incorrect." Intergraph Corp., 253 F.3d at 698. On the contrary, the Court's prior holding was well-reasoned and correct. For example, this Court observed that Mr. Tindall's complaint "had not demonstrated a valid property interest in the item allegedly seized by the government, or demonstrated that the items were taken for a public use." This Court further observed that it lacks "jurisdiction to consider claims arising under the Due Process Clauses of the Fifth Amendment to the United States Constitution." Before the Federal Circuit, Mr. Tindall declined to challenge these well-reasoned and well-supported holdings. This Court should reject Mr. Tindall's invitation to revisit these correct holdings now, more than two years later.

Mr. Tindall's recently filed amended complaint does not change this analysis. Claims arising from the Due Process Clause remain outside this Court's jurisdiction. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997). And Mr. Tindall's amended complaint fails, once more, to allege that his property was taken for public use. Indeed, Mr. Tindall's takings claim stems from the same conducted challenged in his initial complaint and does not include any additional allegations to suggest that the Court's prior holding was incorrect.

(alteration added; internal citations omitted). Defendant, therefore, argues that the court's earlier decisions regarding plaintiff's Fifth Amendment Takings and Fifth Amendment Due Process claims are law of the case. In response, plaintiff argues that "defendant's continuing possession of plaintiff's property for over six (6) years without payment of 'just compensation' as required by the Takings Clause is an anathema to the U.S. Constitution, which is a 'manifest injustice' specifically prohibited by the U.S. Constitution."

The United States Supreme Court has stated that the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (citation and footnote omitted), reh'g denied, 462 U.S. 1146 (1983), supplemented by 466 U.S. 144 (1984); see also Agostini v. Felton, 521 U.S. 203, 236 (1997); Lennar Corp. v. United States, 180 Fed. Cl. 606, 614 (2026). Law of the case is a judicially created doctrine, under which "a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." Suel v. Sec'y, Health & Human Servs., 192 F.3d 981, 985 (Fed. Cir. 1999) (citation omitted), reh'g denied (Fed. Cir. 2000). The "law of the case doctrine is limited to issues that were actually decided, either explicitly or by necessary implication, in the earlier litigation." Toro Co. v. White Consol. Indus., Inc., 383 F.3d 1326, 1335 (Fed. Cir. 2004) (citation omitted), reh'g en banc denied (2004), cert. denied, 544 U.S. 948 (2005); see also Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc., 761 F.2d 649, 657 (Fed. Cir.), cert. denied, 474 U.S.

55

902 (1985). Law of the case doctrine applies to a court's own decisions, as well as decisions of other courts in the same case. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988); see also Gindes v. United States, 740 F.2d 947, 950 (Fed. Cir.) ("[T]he Court of Claims describe 'law of the case as a rule that 'A decision by the court on a point in a case becomes the law of the case unless or until it is reversed or modified by a higher court.'" (quoting Raylaine Worsteds, Inc. v. United States, 137 Ct. Cl. 54, 146 F. Supp. 723, 726 (1956))), cert. denied, 469 U.S. 1074 (1984) (alteration added); McGuire v. United States, 97 Fed. Cl. 425, 433 (2011). The law of the case is a doctrine that exists to promote judicial economy and fairness. See, e.g., Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1582 (Fed. Cir.) (noting that law of the case doctrine rests on the need for judicially economy), cert. denied, 513 U.S. 1018, and cert. denied sub nom. D.G. v. T.M.N., 513 U.S. 1018 (1994); Suel v. Sec'y, Health & Human Servs., 192 F.3d at 984 (noting that the law of the case aims to "protect the settled expectations of the parties and promote orderly development of the case.") (citations omitted).

The United States Court of Appeals for the Federal Circuit has explained the fairness theory behind the law of the case doctrine, stating: "Its elementary logic is matched by elementary fairness-a litigant given one good bite at the apple should not have a second." Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 900 (Fed. Cir.) cert. denied, 469 U.S. 857 (1984); see also Dobyns v. United States, 178 Fed. Cl. 264, 280 (2025) (quoting Central Soya Company v. Geo. A. Hormel & Co., 723 F.2d 1573, 1580 (Fed. Cir. 1983)) ("Applying the law of the case 'ensure[s] judicial efficiency and prevent[s] the possibility of endless litigation.'") (alteration in original). In other words, "'no litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time.'" Gindes v. United States, 740 F.2d at 949 (quoting United States v. Turtle Mountain Band of Chippewa Indians, 222 Ct. Cl. 1, 612 F.2d 517, 520 (1979)). Furthermore, "a reassignment to another judge should not be viewed as declaring open season on relitigating any prior rulings with which a party disagrees." Applegate v. United States, 52 Fed. Cl. 751, 765 (2002), appeal dismissed, 57 F. App'x 426 (Fed. Cir.), aff'd, 70 F. App'x 582 (Fed. Cir. 2003), cert. denied, 540 U.S. 1149 (2004) (citation omitted).

Law of the case is a doctrine that, "[i]n the absence of statute the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." Messinger v. Anderson, 225 U.S. 436, 444 (1912) (alteration added; citations omitted); see also Christianson v. Colt Indus. Operating Corp., 486 U.S. at 817; NSTAR Elec. Co. v. United States, 179 Fed. Cl. 441, 455 (2025). Although courts have the power to revisit their own prior decisions, the United States Supreme Court has cautioned that "as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. at 816 (quoting Arizona v. California, 460 U.S. at 618 n.8); see also NSTAR Elec. Co. v. United States, 179 Fed. Cl. at 455. More specifically, the United States Court of Appeals for the Federal Circuit has identified the three exceptional circumstances that justify a departure from the law of the case doctrine:

56

> Reasons that may warrant departure from the law of the case, thus providing an exception to the more rigorous requirements of res judicata, include the discovery of new and different material evidence that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice.

Intergraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001) (citation omitted); see also Gould, Inc. v. United States, 67 F.3d 925, 930 (Fed. Cir. 1995) (citing Gindes v. United States, 740 F.2d at 950); Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d at 900 (citing Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1580 (Fed. Cir. 1983)). The standard to determine whether a court's previous decision was clearly erroneous and constitutes a manifest injustice "'is a stringent one. . . . A mere suspicion of error, no matter how well supported, does not warrant reopening an already decided point.'" Gindes v. United States, 740 F.2d at 950 (quoting N. Helex Co. v. United States, 225 Ct. Cl. 194, 634 F.2d 557, 561-62 (1980) (citation omitted)). The United States Court of Appeals for the Federal Circuit has noted that a "'strong showing of clear error . . . is required before a court should reexamine its decision in the prior appeal.'" Gindes v. United States, 740 F.2d at 950 (quoting United States v. Turtle Mountain Band of Chippewa Indians, 222 Ct. Cl. at 8, 612 F.2d at 521).

The court agrees with defendant's argument that "Mr. Tindall's takings claim stems from the same conduct challenged in his initial complaint and does not include any additional allegations to suggest that the Court's prior holding was incorrect." Although the court believes that the court correctly addressed the Takings allegations in its October 25, 2022 Opinion, and the court's earlier decision properly analyzed the takings claims asserted by the plaintiff, and that now applies to Mr. Tindall's takings claims now before the court, the court also recognizes that in its April 11, 2023 decision, the United States Court of Appeals for the Federal Circuit affirmed this court's decision in part, vacated it in part, and remanded the case back to this court. Specifically, the Federal Circuit determined

> we do not reach Mr. Tindall's contract claim, or the Claims Court's other merits holdings, because the court failed to address a different, colorable argument that it lacked jurisdiction [28 U.S.C. § 1500] over the suit. As the government suggests in its response brief, that provision must be addressed before the Claims Court or we can address the merits.

Tindall v. United States, 2023 WL 2881312, at *3 (alteration added). Therefore, now having directly addressed the Section 1500 issue, the court again considers plaintiff's Takings claims as included in plaintiff's amended complaint.

The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The purpose of this Fifth Amendment provision is to prevent the government from "'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Ark. Game & Fish

Comm'n v. United States, 568 U.S. 23, 31 (2012) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)); see also Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) (quoting Armstrong v. United States, 364 U.S. at 49), abrogated on other grounds by Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005)); Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123–24, reh'g denied, 439 U.S. 883 (1978); Lingle v. Chevron U.S.A. Inc., 544 U.S. at 536; Pumpelly v. Green Bay & Miss. Canal Co., 80 U.S. 166, 179 (1871) (citing principles which establish that "private property may be taken for public uses when public necessity or utility requires" and that there is a "clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified"); Reoforce, Inc. v. United States, 853 F.3d 1249, 1265 (Fed. Cir.), cert. denied, 583 U.S. 1014 (2017); Rose Acre Farm, Inc. v. United States, 559 F.3d 1260, 1266 (Fed. Cir. 2009), cert. denied, 559 U.S. 935 (2010); Janowsky v. United States, 133 F.3d 888, 892 (Fed. Cir. 1998). While the Supreme Court of the United States has "drawn some bright lines" regarding whether a government action constitutes a taking, the Supreme Court recognizes "that no magic formula enables a court to judge, in every case, whether a given government interference with property is a taking." Ark. Game & Fish Comm'n v. United States, 568 U.S. at 31. Thus, "most takings claims turn on situation-specific factual inquiries." Id. at 32; see also Barlow v. United States, 86 F.4th 1347, 1353 (Fed. Cir. 2023) ("'Whether a taking has occurred is a question of law based on factual underpinnings.'" (quoting Chi. Coating Co., LLC v. United States, 892 F.3d 1164, 1169 (Fed. Cir. 2018)).

To succeed under the Fifth Amendment Takings Clause, a plaintiff has the burden of proof to demonstrate that the government took a private property interest for public use without just compensation. See City of Fresno v. United States, 124 F.4th 876, 895 (Fed. Cir. 2024) ("First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest . . . ." (omission added)); St. Bernard Par. Gov't v. United States, 887 F.3d 1354, 1362 (Fed. Cir. 2018) ("It is well established that a takings plaintiff bears the burden of proof to establish that the government action caused the injury."), cert. denied, 586 U.S. 1069 (2019); Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (stating that the "classic taking [is one] in which the government directly appropriates private property for its own use" (alteration in Dimare Fresh, Inc. v. United States) (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 324 (2002))), cert. denied, 579 U.S. 902 (2016); Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), cert. denied, 546 U.S. 811 (2005); Arbelaez v. United States, 94 Fed. Cl. 753, 762 (2010). The government must be operating in its sovereign rather than in its proprietary capacity when it initiates a taking. See St. Christopher Assocs., L.P. v. United States, 511 F.3d at 1385.

The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013); Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir.) (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)), reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005). A court first determines whether a plaintiff possesses a cognizable property

58

interest in the subject of the alleged taking. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); see also McCutchen v. United States, 14 F.4th 1355, 1364 (Fed. Cir. 2021) (quoting Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008)), cert. denied, 143 S. Ct. 422 (2022); Welty v. United States, 926 F.3d 1319, 1323-24 (Fed. Cir. 2019) ("To maintain a cognizable claim for a Fifth Amendment taking, a plaintiff must establish that he possessed an enforceable property right that was taken by the government for public purposes without just compensation." (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1014–19 (1992)); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372 ("'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" (quoting Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied sub nom. E. Mins. Int'l, Inc., et. al v. United States, 535 U.S. 1077 (2002); and citing Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir.), reh'g denied, (Fed. Cir. 1992))); Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir. 2005) (stating that the court does not address the second step "without first identifying a cognizable property interest" (citing Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1381; and Conti v. United States, 291 F.3d 1334, 1340 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003))), reh'g and reh'g en banc denied (Fed. Cir. 2005); Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374-75 (Fed. Cir.), reh'g denied and en banc suggestion denied (Fed. Cir. 2000), cert. denied, 532 U.S. 941 (2001). "If the claimant fails to demonstrate the existence of a legally cognizable property interest, the court's task is at an end." Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003); and M & J Coal Co. v. United States, 47 F.3d at 1154); see also Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1329 (Fed. Cir. 2012) (citing Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372), cert. denied, 567 U.S. 917 (2012). In addition to "'having identified a valid property interest, the court must determine whether the government action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372).

Initially, the court notes that plaintiff has never conceded the validity of the government's actions as a basis for proceeding with his takings claim. To pursue a takings claim in the United States Court of Federal Claims, the plaintiff, must "'concede the validity of the government action which is the basis of the takings claim to bring suit under the Tucker Act.'" Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1332 (Fed. Cir.) (quoting Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802 (Fed. Cir. 1993)), cert. denied, 567 U.S. 917 (2012); see also Tabb Lakes, Ltd. v. United States, 10 F.3d at 802 ("[C]laimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act, 28 U.S.C. § 1491." (citing Florida Rock Indus., Inc. v. United States, 791 F.2d 893, 899 (Fed. Cir. 1986), cert. denied, 479 U.S. 1053 (1987)); Rith Energy, Inc. v. United States, 247 F.3d at 1366 (a plaintiff is "required to litigate [his] takings claim on the assumption that the administrative action was both authorized and lawful") (alteration added); Deltona Corp. v. United States, 228 Ct. Cl. 476, 657 F.2d 1184 (1981), cert. denied, 455 U.S. 1017 (1982))). Instead, plaintiff argues in his

response to defendant's motion to dismiss plaintiff's amended complaint that "[d]elaying payment of plaintiff's §7623(a) award monies for 2-3 weeks for ministerial acts to process payment is understandable, but deferring payment for nearly six (6) years to strongarm plaintiff into conceding his §7623(b) claims before the Tax Court fails to comply with defendant's own regulations requiring the prompt payment of §7623 awards." (alteration added). Defendant also is correct that plaintiff still has not demonstrated a valid property interest and has not established that the award money was taken for public use, both of which are requirements for a successful Fifth Amendment Takings Clause award. See Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348; Klamath Irr. Dist. v. United States, 635 F.3d at 511; Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372. These are the same issues identified by the court in its October 25, 2022 Opinion on plaintiff's original complaint in which the court dismissed plaintiff's Fifth Amendment takings claims. See Tindall v. United States, 2022 WL 19730768, at *15. Four years later, plaintiff has still failed to demonstrate the required components of a Fifth Amendment takings claim. Therefore, plaintiff's claims based on the Fifth Amendment Takings Clause included in plaintiff's amended complaint are dismissed.

The court notes that since the remand of plaintiff's case to the trial court, another Judge of the United States Court of Federal Claims has considered Mr. Tindall's Fifth Amendment Takings Clause claims, albeit regarding claims which were factually unrelated to the Fifth Amendment Takings Clause claims now before this court. In Tindall v. United States, a Judge of this court stated:

> Finally, the Court addresses Mr. Tindall's takings claim. The concluding words of our Constitution's Fifth Amendment states that private property shall not "be taken for public use, without just compensation." The Tucker Act empowers this Court to hear claims asserted under the Just Compensation Clause of the Fifth Amendment. See 28 U.S.C. § 1491 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress . . ."). However, when a complaint is based solely on unlawful government conduct, the "claimant must concede the validity of the government action which is the basis of the taking claim" for the Court to possess jurisdiction. Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802–03 (Fed. Cir. 1993); see also Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1329–32 (Fed. Cir. 2006) (holding that in a takings case, the court assumes that the underlying action was lawful and decides only whether the governmental action in question constituted a taking for which compensation must be paid). Moreover, unauthorized acts by federal officials constitute torts, not takings. See Smithson v. United States, 847 F.2d 791, 794 (Fed. Cir. 1988); see also Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1362 (Fed. Cir. 1998) ("A compensable taking arises only if the government action in question is authorized."). Mr. Tindall's Complaint explicitly alleges an "unconstitutional" taking of his property several times. Because Mr. Tindall contests the lawfulness of EO 14,024 and OFAC's directive requiring that his assets be frozen, he fails to state claim.

60

Tindall v. United States, 167 Fed. Cl. 440, 446 (2023), aff'd, No. 2024-1143, 2024 WL 960452 (Fed. Cir. Mar. 6, 2024), cert. denied, 145 S. Ct. 282 (2024) (omission in original; internal reference omitted).[14]

---

[14] The facts in Mr. Tindall's other case filed in the United States Court of Federal Claims were, also captioned Tindall v. United States, were explained by the United States Court of Appeals for the Federal Circuit, as follows:

> Mr. Tindall owns 2,400 shares of stock in the Public Joint Stock Company Sberbank of Russia ("Sberbank"). In 2021, President Biden signed Executive Order No. 14,024 ("EO 14024"). Fed. Reg. 20249 (Apr. 15, 2021). The United States Office of Foreign Assets ("OFAC"), pursuant to EO 14024, issued sanctions prohibiting any securities transactions involving specified Russian financial institutions, including Sberbank. On April 26, 2022, Charles Schwab & Co., Inc., Mr. Tindall's brokerage firm, notified him of the impending actions on his shares of Sberbank and, on May 25, 2022, placed his shares into an OFAC-controlled escrow account.
>
> During April and May of 2022, Mr. Tindall sent letters to various federal officials. In these letters, Mr. Tindall offered to sell his shares and, alternatively, offered contract terms for use of his shares. The letters also included requested deadlines for response. The government did not respond.
>
> On May 22, 2023, Mr. Tindall filed a complaint before the United States Court of Federal Claims ("CFC"). Mr. Tindall alleged that the government had (1) violated his due process rights under the Fifth Amendment; (2) breached an alleged contract with Mr. Tindall for use of his shares; and (3) unconstitutionally taken his shares. The government moved to dismiss for lack of jurisdiction and for failure to state a claim.

Tindall v. United States, 2024 WL 960452, at *1 (footnote and internal references omitted). Regarding a breach of contract claim, the Judge of the United States Court of Federal Claims also determined, and the Federal Circuit affirmed, that

> [t]he United States' silence cannot be construed as acceptance of Mr. Tindall's contract offer. Ibrahim, 799 F. App'x at 868. Likewise, the United States' failure to pay alleged contractual obligations cannot be considered a breach, as there was no existing contract between the United States and Mr. Tindall. Id. In the absence of a valid contract, it is impossible for the United States to breach any contractual obligations. Therefore, the Court must dismiss Mr. Tindall's claim for breach, as it fails to present a valid claim upon which relief can be granted.

Tindall v. United States, 167 Fed. Cl. at 446 (alteration added); see also Tindall v. United States, 2024 WL 960452, at *2 ("The government's actions therefore do not constitute

In Mr. Tindall's case before the other Judge, <u>Tindall v. United States</u>, 167 Fed. Cl. 440, which is factually unrelated case to the current case before this court, Mr. Tindall appealed the trial court's decision to the United States Court of Appeals for the Federal Circuit. On appeal, the Federal Circuit concluded:

> Mr. Tindall fails to state a takings claim. The Takings Clause of the Fifth Amendment provides "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V. To establish CFC jurisdiction, the "claimant must concede the validity of the government action which is the basis of the taking claim." <u>Tabb Lakes, Ltd. v. United States</u>, 10 F.3d 796, 802–03 (Fed. Cir. 1993).
>
> Here, Mr. Tindall argues that the holding of his shares in an escrow account constitutes "an unconstitutional takings violation." On appeal, Mr. Tindall asserts that the complaint and petition were referring only to the government's failure to pay as unlawful. However, the record shows otherwise. Mr. Tindall's complaint alleges that the government "illegally

---

acceptance of Mr. Tindall's alleged offer. As a result, Mr. Tindall's breach of contract claim fails."). After the Federal Circuit affirmed the trial court's decision and after the United States Supreme Court denied Mr. Tindall's petition for writ of certiorari in plaintiff's factually unrelated case to the current case before this court, Mr. Tindall subsequently filed a new complaint in the United States Court of Federal Claims. <u>See</u> <u>Tindall v. United States</u>, 176 Fed. Cl. 339 (2025), <u>aff'd</u>, No. 2025-1845, 2026 WL 60186 (Fed. Cir. Jan. 8, 2026). As explained by the Judge of the United States Court of Federal Claims:

> Undeterred from his prior failure, Mr. Tindall returned to this Court on January 21, 2025 and amended his Complaint on April 14. His renewed allegations, involving the same operative facts, assert claims for: (1) breach of implied contract; (2) 4,800 violations of the takings clause; and (3) 2,400 due process violations.

<u>Id.</u> at 342–43 (internal references omitted). The Judge determined that all of plaintiff's claims were precluded by res judicata. <u>See id.</u> at 346. Mr. Tindall then again appealed the decision to the Federal Circuit, and the Federal Circuit again affirmed the trial court's decision. <u>See</u> <u>Tindall v. United States</u>, No. 2025-1845, 2026 WL 60186 (Fed. Cir. Jan. 8, 2026). The Federal Circuit concluded:

> The Claims Court properly identified the standard for dismissal: A complaint must be dismissed if it fails to state a claim for relief that is plausible on its face. The Claims Court then correctly identified that a complaint can be dismissed on <u>res judicata</u> grounds. For the foregoing reasons, we agree with the Claims Court's determination that the claims are precluded. The Claims Court thus identified and applied the correct standard for dismissal.

<u>Tindall v. United States</u>, No. 2025-1845, 2026 WL 60186, at *4 (citations omitted). Therefore, the Federal Circuit affirmed the trial court decision. <u>See id.</u>

took" the shares through "unconstitutional conduct." Thus, we conclude that Mr. Tindall's complaint does not "concede the validity of the government action" and, absent concession, fails to state a claim. <u>Tabb Lakes</u>, 10 F.3d at 802–03.

<u>Tindall v. United States</u>, No. 2024-1143, 2024 WL 960452, at *3 (Fed. Cir. Mar. 6, 2024), <u>cert.</u> <u>denied</u>, 145 S. Ct. 282 (2024) (alteration in original; internal references omitted).

In the case currently before the undersigned in this court, even if plaintiff had conceded the validity of the government's actions as a basis for proceeding with his takings claim and had managed to establish a valid property interest and that the award money was taken for public use, as determined above, the delay to pay Mr. Tindall was only 65 days between when the United States Tax Court action finalized and the award became payable, which is consistent with the statutory requirement to "process the award for payment as promptly as the circumstances permit." 26 C.F.R. § 301.7623-4(d)(1). Mr. Tindall himself, as quoted above in his response to defendant's motion to dismiss plaintiff's amended complaint, agreed that "[d]elaying payment of plaintiff's §7623(a) award monies for 2-3 weeks for ministerial acts to process payment is understandable." (alteration added). The court finds a delay of 65 days, although an increase over plaintiff's 2-3 weeks' timeframe, would not demonstrate a compensable takings claim. Plaintiff's takings claims in plaintiff's amended complaint are dismissed.

<u>Due Process Clause Claims</u>

Plaintiff's remaining constitutional claims raised pursuant to the Due Process Clause of the Fifth Amendment of the United States Constitution. In his November 16, 2021 original complaint filed in this court, plaintiff alleged:

> In the intervening thirty-two (32) months, plaintiff has contacted defendant twelve (12) times and notified defendant that interest on the outstanding balance continues to accrue. To date, defendant has not made any payment of the award, nor has defendant identified a legally-sufficient reason for failing to remit plaintiff's IRC §7623(a) award.

In his original complaint, plaintiff argued that his due process was twice violated under the Due Process Clause of the Fifth Amendment to the United States Constitution based on the lack of an avenue to appeal the IRS Whistleblower Office's determination of plaintiff's 26 U.S.C. § 7623(a) claims in the March 5, 2019 Final Award Decision Letter. In plaintiff's original complaint filed with this court, plaintiff argued that "[t]he United States Court of Claims has jurisdiction over this dispute pursuant to 28 U.S.C. §1491(a)(1), because the basis for this dispute is defendant's unconstitutional taking of plaintiff's property and defendant's willful violations of plaintiff [sic] due process rights under the Fifth Amendment to the U.S. Constitution." (alterations added). In this court's October 25, 2022 Opinion, the court dismissed plaintiff's claims based on the Due Process Clause of the Fifth Amendment to the United States Constitution because of a lack of jurisdiction of this court to review such claims. In the court's October 25, 2022 Opinion, this court explained that the "United States Court of Appeals for the Federal Circuit has held that

this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth Amendment to the United States Constitution," citing Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) and LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995), among other cases. See Tindall v. United States, 2022 WL 19730768, at *15. Therefore, this court's October 25, 2022 Opinion concluded that "plaintiff cannot establish this court's jurisdiction by alleging Due Process Clause violations." Id.

In his amended complaint currently before this court, plaintiff again alleges that this court may exercise jurisdiction over his claims of violations of the Due Process Clause of the United States Constitution. Plaintiff alleges that

> the U.S. Court of Federal Claims has jurisdiction over this dispute pursuant to 28 U.S.C. §1491(a)(1), because the basis for this dispute is defendant's taking of plaintiff's property (to wit, plaintiff's two (2) §7623(a) awards and the related income streams) without any pre- or post- deprivation due process, as required by the 5th Amendment to the U.S. Constitution, which states "***No person shall . . . be deprived of*** life, liberty, or ***property, without due process of law***; *nor shall private property be taken for public use, without just compensation*"

(emphasis and omission in original; citations omitted). Pursuant to plaintiff's amended complaint currently under review, plaintiff argues that defendant violated his Due Process rights under the Fifth Amendment to the United States Constitution by failing to provide an avenue for plaintiff to appeal the determination of his whistleblower award in the March 5, 2019 Final Award Decision Letter for his successful 26 U.S.C. § 7623(a) claims. Specifically, plaintiff alleges:

> In the Award Letter, defendant's IRS WBO failed to identify any process for appealing the determinations made in its Award Letter or its subsequent decisions not to pay plaintiff's §7623(a) awards promptly.

> Regardless of how error-filled defendant's IRS WBO's determination specific to plaintiff's §7623(a) claims might be, there is no avenue for plaintiff to appeal defendant's determinations specific to plaintiff's §7623(a) claims.

> Despite the finality of defendant's IRS WBO's §7623(a) award determinations, defendant deferred payment of plaintiff's§7623(a) [sic] awards and provided no due process to appeal that decision.

(citations omitted; alteration added).

Defendant, however, argues that plaintiff's Due Process allegations were already correctly dismissed by this court in its earlier October 25, 2022 Opinion. As quoted above regarding plaintiff's Fifth Amendment takings claims, defendant argues:

Under the law-of-the-case doctrine, that holding "should continue to govern the same issues in subsequent stages in the same case." Etchegoinberry, 132 F.4th at 1378 (Fed. Cir. 2025) (quoting Arizona v. California, 460 U.S. 605, 618 (1983) [sic]. Accordingly, these already-dismissed constitutional claims cannot establish this Court's jurisdiction.

Furthermore, Mr. Tindall has not identified any reason why this Court should revisit its prior holdings regarding Mr. Tindall's constitutional claims. Indeed, there is none. There is no "new and different evidence" or any "contradictory ruling by a controlling authority." Wolfchild, 72 Fed. Cl. at 524. Nor was the Court's prior holding "clearly incorrect." Intergraph Corp., 253 F.3d at 698. On the contrary, the Court's prior holding was well-reasoned and correct. . . .This Court further observed that it lacks "jurisdiction to consider claims arising under the Due Process Clauses of the Fifth Amendment to the United States Constitution." Id. Before the Federal Circuit, Mr. Tindall declined to challenge these well-reasoned and well-supported holdings. This Court should reject Mr. Tindall's invitation to revisit these correct holdings now, more than two years later.

Mr. Tindall's recently filed amended complaint does not change this analysis. Claims arising from the Due Process Clause remain outside this Court's jurisdiction. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997).

(alteration added). Defendant, therefore, requests this court to dismiss plaintiff's current Fifth Amendment Due Process claims again. As with the Takings claims discussed above, the court agrees with defendant's argument that "[t]his Court's holding regarding Mr. Tindall's constitutional claims was correct in 2022 and it remains correct today. Under the law-of-the-case doctrine, that holding 'should continue to govern the same issues in subsequent stages in the same case.'" (alteration added). As with plaintiff's Takings claims, the court correctly addressed plaintiff's Due Process claims in its October 25, 2022 Opinion, now having directly addressed the Section 1500 issue, the court again considers plaintiff's Due Process allegations, as included in plaintiff's amended complaint.

The United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (citing LeBlanc v. United States, 50 F.3d at 1028) (concluding that the United States Court of Federal Claims has no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); see also Smith v. United States, 709 F.3d at 1116 ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act." (alteration added)), reh'g and reh'g

en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages." (alteration added)), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Ali-Bey v. United States, 169 Fed. Cl. at 734; Gulley v. United States, 150 Fed. Cl. at 415 ("In particular, the due process clause of the [United States] Constitution and 42 U.S.C. § 1983 (both of which [plaintiff] cites in his Complaint) are not money mandating sources of law." (alterations added) (citing Harris v. United States, 868 F.3d 1376, 1381 (Fed. Cir. 2017) (quoting In re United States, 463 F.3d at 1335 n.5))); Barksdale v. United States, 174 Fed. Cl. 168, 175 (2024) ("Plaintiff alleges a Taking of his constitutional rights to due process and equal protection, over which this Court lacks jurisdiction."); Vondrake v. United States, 141 Fed. Cl. 599, 602 (2019) (citing Smith v. United States, 709 F.3d at 1116); Weir v. United States, 141 Fed. Cl. at 177; Maehr v. United States, 139 Fed. Cl. 1, 3–4 (2018) (stating that Smith v. United States, 709 F.3d at 1114, "remains controlling law today"), aff'd, 767 F. App'x 914 (Fed. Cir.), cert. denied, 589 U.S. 985, reh'g denied, 589 U.S. 1097 (2019); Zainulabeddin v. United States, 138 Fed. Cl. 492, 505 (2018) (citing LeBlanc v. United States, 50 F.3d at 1028); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238 (2011). Due process claims "must be heard in District Court." Kam-Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012).

The issues regarding the plaintiff's Due Process Clause claims in plaintiff's amended complaint are the same issues that this court identified as raised by plaintiff in his original complaint, specifically that the United States Court of Federal Claims lacks jurisdiction over Fifth Amendment Due Process claims. As explained in this court's October 25, 2022 Opinion: "The United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth Amendment to the United States Constitution." Tindall v. United States, 2022 WL 19730768, at *15. Once again, this court determines that the United States Court of Federal Claims does not have jurisdiction to review plaintiff's allegations of Due Process Clause violations. As explained by the United States Court of Appeals for the Federal Circuit: "The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." Smith v. United States, 709 F.3d at 1116 (citing LeBlanc v. United States, 50 F.3d at 1028); see also Crocker v. United States, 125 F.3d at 1476.

As with the Fifth Amendment Takings claims, another Judge of the United States Court of Federal Claims considered due process claims alleged by Mr. Tindall in this court, although as reflected above, in a factually unrelated case to the current case before this court. In Tindall v. United States, the Judge stated:

66

Mr. Tindall claims entitlement to money damages for alleged violations of his due process rights under the Fifth Amendment. A "money-mandating" claim "exists if the statute, regulation, or constitutional provision that is the basis for the complaint 'can fairly be interpreted as mandating compensation by the Federal Government.'" Jan's Helicopter Serv., Inc., 525 F.3d at 1307 (quoting Mitchell, 463 U.S. at 212, 103 S. Ct. 2961). The Due Process Clause of the Fifth Amendment does not mandate the payment of money. See LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (holding the Due Process clauses of the Fifth and Fourteenth Amendments were insufficient for jurisdiction "because they do not mandate payment of money by the government"); May v. United States, 534 F. App'x 930, 933 (Fed. Cir. 2013). Because the Due Process Clause is not a money-mandating provision, it does not satisfy the Tucker Act's requirements for this Court's jurisdiction. Leblanc, 50 F.3d at 1028 (citation omitted); Grantham v. United States, 601 F. App'x 960, 962 (Fed. Cir. 2015); Bader v. United States, 160 Fed. Cl. 529, 541 (2022). The jurisdiction of this Court does not extend to Mr. Tindall's Fifth Amendment due process claim.

Tindall v. United States, 167 Fed. Cl. at 445 (internal references omitted). On appeal to the United States Court of Appeals for the Federal Circuit, the Federal Circuit held:

Mr. Tindall claims money damages for alleged violations of his due process rights under the Fifth Amendment. Mr. Tindall's complaint identifies 28 U.S.C. § 1491(a)(1) as the basis for jurisdiction, but Mr. Tindall's complaint fails to point to a separate source of substantive law that would create a cause of action against the government. The Due Process clause of the Fifth Amendment does not mandate the payment of money and thus does not, by itself, satisfy the jurisdictional requirements of the CFC [United States Court of Federal Claims]. See LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995). For these reasons, the CFC lacks jurisdiction over Mr. Tindall's due process claim.

Tindall v. United States, 2024 WL 960452, at *2 (internal reference omitted; alteration added). Plaintiff's Fifth Amendment Due Process claims in plaintiff's amended complaint in the above captioned case are, therefore, dismissed.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss plaintiff's amended complaint is **GRANTED**. Plaintiff's amended complaint is **DISMISSED**. The Clerk's Office shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**

67